### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
                                                          :
In re:                                                    :        Chapter 11
                                                          :
FREDERICK'S OF HOLLYWOOD, INC., et al.,¹                  :        Case No. 15-_____ (__)
                                                          :
                                                          :
                        Debtors.                          :        (Joint Administration Requested)
-------------------------------------------------------- x
```

### DEBTORS' APPLICATION FOR ENTRY OF ORDER AUTHORIZING EMPLOYMENT AND RETENTION OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS AND NOTICING AGENT EFFECTIVE *NUNC PRO TUNC* TO THE PETITION DATE

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each a "Debtor" and, collectively, the "Debtors") hereby file this application (the "Application") seeking entry of an order (the "Order"), substantially in the form attached hereto as **Exhibit A**, authorizing the employment and retention of Kurtzman Carson Consultants LLC ("KCC") as the claims and noticing agent (the "Claims and Noticing Agent") in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date (as defined herein). In support of this Application, the Debtors submit the Declaration of Evan Gershbein, Senior Vice President of Corporate Restructuring Services at KCC (the "Gershbein Declaration"), attached hereto as **Exhibit B**, and respectfully state as follows:

---

[1] The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc. (8882); and (vi) Hollywood Mail Order, LLC (5205). The debtors' principal offices are located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

## Jurisdiction

1.     This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.     Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     The statutory bases for the relief requested herein are section 156(c) of title 28 of the United States Code (the "Judicial Code"), section 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 2002-1(f) and 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the *Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c)*, dated February 1, 2012 (the "Claims Agent Protocol"), instituted by the Clerk of Court (the "Clerk").

## Background

4.     On April 19, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases.  The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

5.     Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand.  Since their inception, the Debtors have remained a market leader and innovator in the female fashion and lingerie industry.  The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and

2

sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry, personal care products, and novelties).  At their height, the Debtors operated over 200 retail stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

6.      The Debtors were compelled to commence these chapter 11 cases amidst a sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

7.      Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

8.      Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

## Retention of KCC as Claims and Noticing Agent

### I.      KCC's Qualifications

9.      KCC is one of the country's leading chapter 11 administrators, with expertise in noticing and claims processing. KCC has substantial experience and has provided services

substantially similar to those contemplated in this representation to other chapter 11 debtors in the District of Delaware.   See, e.g., In re Endeavour Operating Corporation, No. 14-12308 (Bankr. D. Del. Oct. 15, 2014); In re FCC Holdings, No. 14-11987 (Bankr. D. Del. Aug. 27, 2014); In re Source Home Ent'mt, LLC, No. 14-11553 (Bankr. D. Del. Jun. 23, 2014); In re Brookstone Holdings Corp., No. 14-10752 (Bankr. D. Del. Apr. 3, 2014); In re Physiotherapy Holdings, Inc., No. 13-12965 (Bankr. D. Del. Nov. 12, 2013); In re Global Aviation Holdings Inc., No. 13-12945 (Bankr. D. Del. Nov. 12, 2013); In re OnCure Holdings, Inc., No. 13-11540 (Bankr. D. Del. Jun. 14, 2013); In re Synagro Tech., Inc., No. 13-11041 (Bankr. D. Del. Apr. 24, 2013); In re The Dolan Co., No. 14-10614 (Bankr. D. Del. Mar. 23, 2014); In re Ormet Corp., No. 13-10334 (Bankr. D. Del. Feb. 25, 2013); In re Penson Worldwide, Inc., No. 13-10061 (Bankr. D. Del. Jan. 11, 2013).

10.     Pursuant to the Debtors' request, KCC has agreed to serve as Claims and Noticing Agent on and after the Petition Date with assurances that the Debtors would seek approval of its employment and retention, effective *nunc pro tunc* to the Petition Date, so that KCC may be compensated for its pre-application services.  The Debtors believe that no party in interest will be prejudiced by the granting of the *nunc pro tunc* employment, as provided in this Application, because KCC has provided and continues to provide valuable services to the Debtors' estates in the interim period.

11.     Courts in this District have routinely approved *nunc pro tunc* employment similar to that requested herein in matters comparable to this matter. See, e.g., In re MIG, LLC and ITC Cellular, LLC, No. 14-11605 (KG) (Bankr. D. Del. Jul. 2, 2014); In re Mach Gen, LLC, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); In re Fisker Auto. Holdings, No. 13-13087 (KG) (Bankr. D. Del. Nov. 26, 2013).  Accordingly, to help manage claims and noticing tasks with

respect to the approximately 6,000 notice parties that are expected to be involved in the Debtors'

chapter 11 cases, the Debtors respectfully request entry of an order authorizing the Debtors to

retain and employ KCC as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition

Date.

## II.    Services to Be Provided by KCC

12.    Subject to Court approval, at the request of the Debtors, and to the extent

necessary, KCC has agreed to perform the following tasks in its role as the Claims and Noticing

Agent in these chapter 11 cases (collectively, the "<u>Claims and Noticing Services</u>"), as well as

quality control relating thereto:

    i.    Prepare and serve required notices and documents in these cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") in the form and manner directed by the Debtors and/or the Court, including without limitation, (a) notice of the commencement of the cases and the initial meeting of creditors under Bankruptcy Code § 341(a), (b) notice of any claims bar date, (c) notices of transfers of claims, (d) notices of objections to claims and objections to transfers of claims, (e) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (f) notice of the effective date of any plan, and (g) all other notices, orders, pleadings, publications and other documents as the Debtors or Court may deem necessary or appropriate for an orderly administration of the cases;

    ii.    maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "<u>Schedules</u>") as applicable, listing the Debtors' known creditors and the amounts owed thereto;

    iii.    maintain (a) a list of all potential creditors, equity holders and other parties in interest and (b) a "core" mailing list consisting of all parties described in Bankruptcy Rule 2002 and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; updating and making said lists available upon request by a party in interest or the Clerk;

    iv.    as necessary, furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing a proof of claim, after such notice and form are approved by the Court, and notifying said potential creditors of the existence, amount and classification of their respective

claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

v.      maintain a post office box or address for the purpose of receiving claims and returned mail, and process all mail received;

vi.     for all notices, motions, orders or other pleadings or documents served, prepare and file or cause to be filed with the Clerk an affidavit or certificate of service within seven (7) business days of service which includes (a) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (b) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (c) the manner of service, and (d) the date served;

vii.    process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

viii.   maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and specify in the Claims Registers the following information for each claim docketed:   (a) the claim number assigned; (b) the date received, (c) the name and address of the claimant and agent, if applicable, who filed the claim, (d) the amount asserted, (e) the asserted classification(s) of the claim (e.g., secured, unsecured, priority, etc.), (f) the applicable entity, and (g) any disposition of the claim;

ix.     implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

x.      record all transfers of claims and providing any notices of such transfers as required by Bankruptcy Rule 3001(e);

xi.     relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to their offices, not less than weekly;

xii.    upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

xiii.   monitor the Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations on and/or changes to the claims register and any service or

mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

xiv.     assist in the dissemination of information to the public and respond to requests for administrative information regarding these chapter 11 cases as directed by the Debtors and/or the Court, including through the use of a case website and/or call center;

xv.     monitoring the Court's docket in these chapter 11 cases and, when filings are made in error or containing errors, alert the filing party of such error and work with them to correct and such error;

xvi.     if these chapter 11 cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three (3) days of notice to KCC of entry of the order converting the cases;

xvii.     thirty (30) days prior to the close of these chapter 11 cases, to the extent practicable, request that the Debtors submit to the Court a proposed order dismissing KCC as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases;

xviii.     within seven (7) days of notice to KCC of entry of an order closing these chapter 11 cases, provide to the Court the final version of the Claims Registers as of the date immediately before the close of the chapter 11 cases; and

xix.     at the close of these chapter 11 cases, box and transport all original documents, in proper format, as provided by the Clerk's Office, to (a) the Philadelphia Federal Records Center, 14470 Townsend Road, Philadelphia, PA 19154, or (b) any other location requested by the Clerk's Office.

13.     The Claims Registers shall be open to the public for examination, without charge, during regular business hours at KCC's office located at 2335 Alaska Avenue, El Segundo, California 90245.  The Claims Registers shall also be maintained on a case-specific website maintained by KCC at www.kccllc.net/fredericks.

14.     KCC shall not employ any past or present employee of the Debtors for work that involves the Debtors' bankruptcy cases.

### III.    KCC's Compensation

15.    The Debtors respectfully request that the undisputed fees and expenses incurred by KCC in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of the Court.

16.    KCC has agreed to maintain records of all services showing dates, categories of services, fees charged, and expenses incurred, and to serve monthly invoices on the Office of the United States Trustee (the "U.S. Trustee"), the Debtors, counsel for the Debtors, counsel for the agent under the prepetition credit facility and proposed debtor-in-possession financing facility, counsel for any official committee monitoring the expenses of the Debtors and any party in interest who specifically requests service of the monthly invoices.  If any dispute arises relating to the engagement agreement, which is attached hereto as **Exhibit C** (the "Engagement Agreement"), or monthly invoices, the parties shall meet and confer in an attempt to resolve the dispute.  If resolution is not achieved, the parties may seek resolution of the matter from the Court.

17.    Prior to the Petition Date, the Debtors provided KCC a retainer in the amount of $30,000.  KCC seeks to first apply the retainer to all prepetition invoices, and thereafter, to have the retainer replenished to the original retainer amount, and thereafter, to hold the retainer under the Engagement Agreement during these chapter 11 cases as security for the payment of fees and expenses incurred under the Engagement Agreement.  Following termination of the Engagement Agreement, KCC will return to the Debtors any amount of the retainer that remains.

18.    Additionally, under the terms of the Engagement Agreement, the Debtors have agreed to indemnify, defend and hold harmless KCC and its members, officers, employees,

representatives, and agents under certain circumstances specified in the Engagement Agreement, provided that the Debtors shall have no obligation to indemnify KCC, or provide contribution or reimbursement to KCC, for any claim or expense that is either:  (i) judicially determined (the determination having become final) to have arisen from KCC's gross negligence, willful misconduct or fraud; (ii) for a contractual dispute in which the Debtors allege the breach of KCC's contractual obligations if the Court determines that indemnification, contribution or reimbursement would not be permissible pursuant to In re United Artists Theatre Co. v. Walton (In re United Artists Theatre Co.), 315 F.3d 217 (3d Cir. 2003); or (iii) settled prior to a judicial determination under (i) or (ii), but determined by this Court, after notice and a hearing, to be a claim or expense for which KCC should not receive indemnity, contribution or reimbursement under the terms of the Engagement Agreement as modified by the Order.  The Debtors believe that such an indemnification obligation is customary, reasonable, and necessary to retain the services of a claims and noticing agent in these chapter 11 cases.

**IV.     KCC's Disinterestedness**

19.     In connection with its retention as Claims and Noticing Agent, KCC represents in the Gershbein Declaration, among other things, that:

i.     KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in these chapter 11 cases;

ii.     by accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government in connection with these chapter 11 cases;

iii.     in its capacity as the Claims and Noticing Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States; and

iv.     KCC is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is engaged.

20.    The Debtors have been advised that, to the best of KCC's knowledge, and except as set forth in the Gershbein Declaration, based on KCC's results of their search performed to date, KCC and its personnel:

    i.    are not creditors, equity security holders, or insiders of the Debtors;

    ii.    are not and were not, within two (2) years before the date of the filing of these chapter 11 cases, directors, officers or employees of the Debtors; and

    iii.    do not have an interest materially adverse to the interests of the Debtors' estates or any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors.

21.    KCC will supplement its disclosure to the Court if any facts or circumstances are discovered that would require such additional disclosure.

**V.    Compliance with Claims Agent Protocol**

22.    The Debtors represent that this Application complies with the Claims Agent Protocol and substantially conforms to the standard section 156(c) application used in this Court.

23.    The Debtors' selection of KCC to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol, in that the Debtors have obtained and reviewed engagement proposals from at least two other court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that KCC's rates are competitive and reasonable given KCC's quality of services and expertise.

**Relief Requested**

24.    The Debtors seek entry of an Order substantially in the form attached hereto as **Exhibit A**: authorizing the employment and retention of KCC as the Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date.  The terms of KCC's retention are set forth in the Engagement Agreement attached hereto as **Exhibit C**;

provided, however, that KCC is seeking approval solely of the terms and provisions as set forth in section 156(c) of the Judicial Code and the proposed Order attached hereto.  To the extent that there is any inconsistency between this Application, the Order, and the Engagement Agreement, the Debtors respectfully request that the Order shall govern.

25.     By separate motion, the Debtors will seek authorization to retain and employ KCC as administrative advisor in these chapter 11 cases pursuant to section 327(a) of the Bankruptcy Code because the administration of these chapter 11 cases will require KCC to perform duties outside the scope of 28 U.S.C. § 156(c).

### Basis for Relief

26.     Section 156(c) of the Judicial Code, section 105(a) of the Bankruptcy Code, Local Rule 2002-1(f), and the Claims Agent Protocol permit the retention and employment of KCC as the Claims and Noticing Agent in these chapter 11 cases in order to assume full responsibility for the distribution of notices and the maintenance, processing, and docketing of proofs of claim filed in the Debtors' cases.

27.     Section 156 of the Judicial Code, in relevant part, provides:

Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States.  The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c).

28.     Section 105 of the Bankruptcy Code, in relevant part, provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any

11

determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

29.    Local Rule 2002-1(f) provides:

Upon motion of the debtor or trustee, at any time without notice or hearing, the Court may authorize the retention of a notice and/or claims clerk under 28 U.S.C. § 156(c).  In all cases with more than 200 creditors or parties in interest listed on the creditor matrix, unless the Court orders otherwise, the debtor shall file such motion on the first day of the case or within seven (7) days thereafter.  The notice and/or claims clerk shall comply with the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c) (which can be found on the Court's website) and shall perform the Claims and Noticing Services.

Del. Bankr. L.R. 2002-1(f).

30.    The Debtors anticipate that there will be in excess of 6,000 entities to be noticed in these chapter 11 cases.  In view of the number of anticipated parties in interest and the relative complexity of the Debtors' business, the Debtors submit that the employment and retention of a claims and noticing agent is required by Local Rule 2002-1(f) and is otherwise in the best interests of the Debtors' estates and creditors, because the Debtors will be relieved of the burdens associated with the Claims and Noticing Services.   Accordingly, the Debtors will be able to devote their full attention and resources to maximize value for its stakeholders and facilitate the orderly administration of these chapter 11 cases.

31.    The Debtors believe the retention of KCC is in the best interests of the Debtors, the Debtors' estates and all parties in interest.   As set forth more fully in the Gershbein Declaration, KCC is fully equipped to handle the volume of mailing involved in properly sending the notices to, and processing the claims (if necessary) of, creditors and other interested parties in these chapter 11 cases.   Additionally, KCC has expertise in noticing and claims processing.  KCC has acted as the claims and noticing agent in many chapter 11 cases, including

several cases which are currently pending in the United States Bankruptcy Court for the District of Delaware.

## <u>Notice</u>

32.    The Debtors will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of an order, substantially in the form attached hereto as **<u>Exhibit A</u>**:  (i) authorizing the employment and retention of KCC as the Claims and Noticing Agent in the Debtors' chapter 11 cases, effective *nunc pro tunc* to the Petition Date; and (ii) granting further relief as may be appropriate and proper.

Dated:  April 20, 2015

<u>/s/ William Soncini</u>
William Soncini
Chief Operating Officer
Frederick's of Hollywood, Inc.