## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :     Chapter 11
                                                             :
FREDERICK'S OF HOLLYWOOD, INC., et al.,¹                      :     Case No. 15-_____ (__)
                                                             :
                                                             :
                              Debtors.                        :     (Joint Administration Requested)
------------------------------------------------------------ x
```

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) CONTINUE OPERATING CASH MANAGEMENT SYSTEM, (B) HONOR CERTAIN PREPETITION OBLIGATIONS RELATED THERETO, (C) MAINTAIN EXISTING BUSINESS FORMS, AND (D) CONTINUE PERFORMING AND GRANTING ADMINISTRATIVE PRIORITY FOR INTERCOMPANY TRANSACTIONS, (II) GRANTING THE DEBTORS AN EXTENSION TO COMPLY WITH THE REQUIREMENTS OF SECTION 345(b), AND (III) SCHEDULING A FINAL HEARING

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry of interim and final orders, pursuant to sections 105, 345, and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 2015-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtors to (a) continue operating the Cash Management System (as defined herein), (b) honor the Bank Fees (as defined herein),

---

[1]    The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows:  (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc. (8882); and (vi) Hollywood Mail Order, LLC (5205).  The debtors' principal offices are located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

(c) maintain existing business forms, and (d) continue the Intercompany Transactions (as defined herein) in the ordinary course of business and provide administrative expense priority to the Intercompany Transactions, (ii) granting the Debtors a 30-day extension to comply with the requirements of section 345(b) of the Bankruptcy Code, (iii) scheduling a final hearing, and (iv) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtors respectfully state as follows:

<u>**Jurisdiction**</u>

1.      This court (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

<u>**Background**</u>

3.      On April 19, 2015 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases.  The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

4.      Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand.  Since their inception, the Debtors have remained a market leader and innovator in the female fashion and lingerie industry.  The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry,

personal care products, and novelties).  At their height, the Debtors operated over 200 retail stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

5.      The Debtors were compelled to commence these chapter 11 cases amidst a sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

6.      Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

7.      Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

**Cash Management System**

**I.      The Bank Accounts**

8.      In the ordinary course of business, the Debtors utilize an integrated and centralized cash management system (the "Cash Management System") to collect, manage, and disburse funds used in their operations.  The Cash Management System is essential to the

3

efficient execution and achievement of the Debtors' business objectives, and to maximizing the value of their estates.

9.      As of the Petition Date, the Debtors maintained 14 bank accounts and 38 sub-accounts (collectively, the "Bank Accounts") at several banks (each, a "Bank" and, collectively, the "Banks") in the United States.  The Debtors primarily operate their Cash Management System through 7 active bank accounts and 38 active sub-accounts maintained at Wells Fargo Bank, N.A. ("Wells Fargo") and Bank of America, N.A. ("Bank of America").  Attached as **Exhibit 1** to the proposed orders annexed hereto is a schedule that identifies each of the Debtors' bank accounts, the last four digits of each account number, and the related Bank and Bank contact information.  Attached to this Motion as **Exhibit C** is a diagram that illustrates the structure of the Cash Management System.

10.     All funds on deposit in the Debtors' Bank Accounts are insured by the Federal Deposit Insurance Corporation to the extent provided by law.  Wells Fargo and Bank of America are on the U.S. Trustee's list of approved depository institutions.

11.     The Debtors incur certain fees and charges in connection with the ordinary course operation of the Cash Management System (collectively, the "Bank Fees").  Pursuant to this Motion, the Debtors request authority to continue to honor and pay applicable Bank Fees in the ordinary course of business, including Bank Fees incurred prior to the Petition Date.

12.     Concentration Account.  The Debtors maintain an overall concentration account (the "Concentration Account") at Wells Fargo.  Prior to the Petition Date, as cash was required to meet the Debtors' working capital needs, the Debtors would draw on their secured revolving credit facility (the "Prepetition Credit Facility") to meet such needs.  Prior to the Petition Date, the Concentration Account received all advances from the Prepetition Credit Facility, and funded

substantially all of the Debtors' disbursements indirectly (through linked disbursement accounts), including the Debtors' vendor obligations, payroll, certain tax obligations, and certain insurance and benefits programs.

13.    The Concentration Account also directly paid certain of the Debtors' obligations that are shared among the various sides of their businesses, including certain of the Debtors' vendor obligations, and all of the Debtors' credit card processing fee and chargeback obligations. The Debtors also used the Concentration Account to initiate certain wires and ACH transfers from time to time. The Concentration account has a "fraud filter" function, which monitors all ACH transactions. Only ACH transfers from previously approved identification numbers will clear the concentration account. The Debtors initiated all ACH transactions except for transactions initiated by certain approved vendors, namely UPS, USPS, American Express, Discover, and Chase Paymentech.

14.    Wells Fargo Deposit Account. The Debtors maintain a deposit account at Wells Fargo (the "Wells Fargo Deposit Account"), which is covered by a deposit account control agreement with Wells Fargo and the lenders under the Debtors' Prepetition Credit Facility. Prior to the Petition Date, the Wells Fargo Deposit Account received cash deposits from the Debtors' retail stores in connection with in-store sales, credit card receipt deposits in accordance with the Debtors' credit card processing agreements, and deposits of all checks and funds received at the Debtors' office located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028 and the Debtors' Phoenix distribution warehouse located at 5005 S. 40th St., Suite 140, Phoenix, AZ 85040. Prior to the Petition Date, all funds on deposit in the Wells Fargo Deposit Account were automatically swept daily to pay down the Prepetition Credit Facility. Pursuant to this Motion,

the Debtors propose to continue to use the Wells Fargo Deposit Account postpetition in a similar fashion.

15.    <u>Main Bank of America Deposit Account</u>.  The Debtors also maintain a deposit account at Bank of America (the "<u>Main Bank of America Deposit Account</u>") that received cash deposits of the sales revenues from certain of the Debtors' former retail store locations through certain linked accounts.  The Main Bank of America Deposit Account is comprised of 38 sub-accounts – one sub-account for each store that used Bank of America for their respective cash deposits.[2]  The sub-accounts were swept daily to the Main Bank of America Deposit Account.

16.    <u>Controlled Disbursement Account</u>.  The Debtors also maintain a controlled disbursement account at Wells Fargo (the "<u>Controlled Disbursement Account</u>"), which is used to issue checks for accounts payable and for certain tax obligations.  The Controlled Disbursement Account, which is a zero-balance account, is linked to the Concentration Account.  The Debtors disburse funds from this account using Wells Fargo's "positive pay" feature.  Prior to any disbursement, the Debtors upload all check payment information (<u>i.e.</u>, check date, payee, and amount).  When a check is presented to any bank for deposit by one of Debtors' vendors or payees, all check payment information is verified and only verified checks are honored.

17.    <u>Payroll Account</u>.  The Debtors maintain a payroll account at Wells Fargo (the "<u>Payroll Account</u>") that is used (i) to honor paper checks issued to terminated employees of the corporate office, located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028, and (ii) to initiate wires to ADP Services ("<u>ADP</u>"), a third party payroll processor, for  employees that

---

[2]    The Debtors do not anticipate that any deposits will be made into the 38 sub-accounts during the posnpetition period.

receive direct deposit of their payroll or utilize pay cards.[3]  The Payroll account is a zero-balance

account linked to the Concentration Account.

18.    Refund Account.    The Debtors also maintain an account at Wells Fargo (the

"Refund Account") that is used to issue refunds to customers of debtor Hollywood Mail Order,

LLC ("Mail Order"). The Refund Account is a zero-balance account linked to the Concentration

Account.  Amounts drawn from the Refund Account are drawn from the Concentration Account.

There is very little activity connected to the Refund Account as the majority of Mail Order's

customers pay with credit cards and credit card purchases are refunded via the Debtors' credit

card processing and charge back agreements.

19.    FSA Account.    The Debtors also maintain an account at Wells Fargo (the "FSA

Account") that is used to fund the employee flex savings account program (the "FSA Program").

Each pay period, a portion of the gross pay of employees who participate in the FSA program is

withheld and transferred into the FSA Account.  When an employee incurs a qualifying medical

expense, a third-party employee benefits administrator, Conexis, administers the funds to

reimburse the employee.

20.    Inactive Accounts.    The Debtors also maintain five additional accounts at JP

Morgan Chase Bank, N.A., Region's Bank, Citibank, N.A., People's United Bank, N.A., and

Fifth Third Bank, none of which is active or used by the Debtors in their operations (collectively,

the "Inactive Accounts").  As of the Petition Date, the Debtors did not use the Inactive Accounts

in their operations, and no material balances were maintained in any of the Inactive Accounts.[4]

---

[3]    In lieu of direct deposit, certain employees receive their salaries via pay cards, which the Debtors fund with
    such employees' weekly wages.

[4]    The Debtors intend to close the Inactive Accounts during the postpetition period.

## Business Forms

21.     The Debtors utilize numerous preprinted business forms in the ordinary course of their business (including, without limitation, letterhead, purchase orders, invoices, and checks), including in connection with its Cash Management System.  In connection with their chapter 11 cases, the Debtors would be required by the United States Trustee (the "U.S. Trustee") under the U.S. Trustee's *Operating Guidelines for Chapter 11 Cases* (the "U.S. Trustee Guidelines") to incur the expense and delay of ordering entirely new business forms referencing the Debtors' status as debtors in possession absent relief from the Court.  The Debtors request that they be authorized to use their pre-existing business forms without such a reference in order to minimize expense to the estates.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, each Debtor entity will reorder checks with the designation "Debtor-in-Possession" and the corresponding case number.

## Intercompany Transactions

22.     In connection with the daily operation of the Cash Management System, as funds are disbursed throughout the Cash Management System, and as business is transacted among the Debtors, at any given time there may be intercompany claims owing by one Debtor to another. The Debtors track all fund transfers in their accounting system and can ascertain, trace, and account for all intercompany transactions (the "Intercompany Transactions").  The Intercompany Transactions include (i) payment of payroll expenses by Frederick's of Hollywood Stores, Inc. ("Stores") on behalf of all other Debtors, and (ii) the issuance of checks by Stores on behalf of all other Debtors.   Under the Debtors' existing procedures for recording Intercompany Transactions, the Debtors will be able to track and segregate postpetition Intercompany Transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management

System and the Debtors' operations would be unnecessarily disrupted, to the detriment of the Debtors and their estates.

<strong><u>Relief Requested</u></strong>

23.     The Debtors seek entry of interim and final orders, pursuant to sections 105, 345, and 363 of the Bankruptcy Code, rules 6003 and 6004 of the Bankruptcy Rules, and rule 2015-2 of the Local Rules, substantially in the forms attached hereto as **<u>Exhibit A</u>** and **<u>Exhibit B</u>**, respectively, (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor the Bank Fees, (c) maintain existing business forms, and (d) continue the Intercompany Transactions in the ordinary course of business and provide administrative expense priority to the Intercompany Transactions, (ii) granting the Debtors a 30-day extension to comply with the requirements of section 345(b) of the Bankruptcy Code, (iii) scheduling a final hearing, and (iv) granting certain related relief, as described more fully herein.

<strong><u>Basis for Relief</u></strong>

**I.      Maintaining Existing Cash Management Systems Is Essential to Debtors' Operational Stability**

24.     The U.S. Trustee Guidelines require a debtor in possession to, among other things:

     a.    establish one debtor-in-possession bank account for all estate monies required for the payment of taxes, including payroll taxes;

     b.    close all existing bank accounts and open new debtor-in-possession accounts;

     c.    maintain a separate debtor-in-possession account for cash collateral; and

     d.    obtain checks that bear the designation "debtor-in-possession" and reference the bankruptcy case number and type of account on such checks.

25.     These requirements are designed to provide a clear line of demarcation between prepetition and postpetition claims and payments, and help protect against the inadvertent

9

payment of prepetition claims by preventing banks from honoring checks drawn before the Petition Date.  Given, however, that the Debtors' business and financial affairs require the collection, disbursement, and movement of funds through their 14 Bank Accounts and 38 sub-accounts, enforcement of this provision of the U.S. Trustee Guidelines during these chapter 11 cases would severely disrupt the Debtors' operations.  Accordingly, the Debtors respectfully request that the Court allow them to operate each of the Bank Accounts listed on **Exhibit 1** to the proposed orders attached hereto as they were maintained in the ordinary course of business prior to the Petition Date.

26.    Continuation of the Cash Management System is permitted pursuant to section 363(c)(1) of the Bankruptcy Code, which authorizes the debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  Additionally, courts in this and other districts have recognized that an integrated cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  The Third Circuit has agreed, emphasizing that requiring a debtor to maintain separate accounts "would be a huge administrative burden and economically inefficient."  Columbia Gas, 997 F.2d at 1061; see also Southmark Corp. v. Grosz (In re Southmark Corp.), 49 F.3d 1111, 1114 (5th Cir. 1995) (finding cash management system allows a debtor "to administer more efficiently and effectively its financial operations and assets").

II.    **Maintaining the Existing Cash Management System Will Not Harm Parties in Interest**

10

27.     Continued use of the Cash Management System will facilitate the Debtors'
chapter 11 cases by, among other things, avoiding administrative inefficiencies and expenses
associated with disrupting this system and minimizing delays in the payment of postpetition
obligations.  The Debtors respectfully submit that parties in interest will not be harmed by the
maintenance of the existing Cash Management System because the Debtors employ appropriate
mechanisms and internal control procedures to prevent unauthorized payments on account of
obligations incurred before the Petition Date.  As such, maintaining the Cash Management
Systems is in the best interests of the Debtors' estates.

III.    **Authorizing the Debtors to Continue to Make Electronic Payments and Transfers Is
        Warranted**

28.     The Debtors request that the Court grant further relief from the U.S. Trustee
Guidelines to the extent they require the Debtors to make all disbursements by check with a
notation representing the reason for the disbursement.  As discussed above, in the ordinary
course of business, the Debtors conduct transactions through electronic wire transfers and other
similar methods.  If the Debtors' ability to conduct transactions by debit, wire, ACH transfer, or
other similar methods is impaired, the Debtors may be unable to perform under certain contracts,
their business operations may be unnecessarily disrupted, and their estates will incur additional
and unnecessary costs.

IV.     **Authorizing Banks to Continue to Maintain, Service, and Administer the Bank
        Accounts in the Ordinary Course of Business Is Warranted**

29.     The Debtors respectfully request that the Court authorize the Banks to continue to
maintain, service, and administer the Bank Accounts as accounts of the Debtors as debtors in
possession, without interruption and in the ordinary course of business.  In this regard, the Banks
should be authorized to receive, process, honor, and pay any and all checks, ACH transfers, other
instructions, and drafts payable through, drawn, or directed on such Bank Accounts after the

Petition Date by holders, makers, or other parties entitled to issue instructions with respect thereto; provided, however, that any check, advise, draft, or other notification that the Debtors advised the Banks to have been drawn, issued, or otherwise presented before the Petition Date may be honored by the banks only to the extent authorized by order of the Court.

30.     The Debtors further request that the Court authorize the Banks to accept and honor all representations from the Debtors as to which checks, drafts, wires, or ACH transfers should be honored or dishonored consistent with any order of the Court and governing law, whether such checks, drafts, wires, or ACH transfers are dated before or subsequent to the Petition Date.  The Debtors also request that, to the extent a Bank honors a prepetition check or other item drawn on any account either (i) at the direction of the Debtors, (ii) in a good-faith belief that the Court has authorized such prepetition check or item to be honored, or (iii) as a result of an innocent mistake made despite the above-described protective measures, such Bank will not be deemed to be liable to the Debtors or their estates on account of such prepetition check or other item honored postpetition.  The Debtors respectfully submit that such relief is reasonable and appropriate because the Banks are not in a position to independently verify or audit whether a particular item may be paid in accordance with a Court order or otherwise.

31.     Moreover, the Debtors request that the Court authorize them to pay the Bank Fees and authorize the Banks to (i) continue to charge the Bank Fees and (ii) charge-back returned items to the Bank Accounts, whether such items are dated before, on, or subsequent to the Petition Date, in the ordinary course of business.

32.     Courts in this District have regularly waived the U.S. Trustee Guidelines on the grounds that they are impractical and potentially detrimental to a debtor's postpetition business operations and restructuring efforts.  See, e.g., In re RadioShack Corp., No. 15-10197 (BLS)

(Bankr. D. Del. Mar. 9, 2015) (final order authorizing the debtors' continued use of existing cash management system and bank accounts); In re Dendreon Corp., No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014) (same); In re Deb Stores Holding LLC, No. 1-12676 (KG) (Bankr. D. Del. Dec. 5, 2014) (same); In re Trump Entm't Resorts, Inc., No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014) (same); In re Energy Future Holdings Corp., et al., No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014) (same); In re Mach Gen, LLC, et al., No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (same); In re Conexant Sys., Inc., No. 13-10367 (MFW) (Bankr. D. Del. Mar. 1, 2013) (same); In re Buffets Rests. Holdings, Inc., No. 12-10237 (MFW) (Bankr. D. Del. Jan. 19, 2012) (same); In re LTAP US, LLLP, No. 10-14125 (KG) (Bankr. D. Del. Jan. 28, 2011) (same); In re U.S. Concrete, Inc., No. 10-11407 (PJW) (Bankr. D. Del. Apr. 30, 2010) (same).

**V.      Court Should Authorize the Debtors to Continue Using Their Existing Business Forms**

33.      To avoid disruption of the Cash Management System and unnecessary expenses, pursuant to Local Rule 2015-2(a), the Debtors request that they be authorized to continue to use their business forms substantially in the form existing immediately before the Petition Date, without reference to the Debtors' status as debtors in possession.  The Debtors submit that parties in interest will not be prejudiced if such relief is granted because parties doing business with the Debtors will likely be aware of their status as debtors in possession and, thus, changing business forms is unnecessary and would be unduly burdensome.  In accordance with Local Rule 2015-2(a), to the extent the Debtors exhaust their existing supply of checks, each Debtor entity will reorder checks with the designation "Debtor-in-Possession" and the corresponding case number.

34.      Courts in this District have routinely allowed debtors to use their prepetition business forms without the "Debtor-in-Possession" label.  See, e.g., In re Dendreon Corp., No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014) (order authorizing continued use of business

forms); <u>In re Deb Stores Holding LLC,</u> No. 1-12676 (KG) (Bankr. D. Del. Dec. 5, 2014) (same);

<u>In re Trump Entm't Resorts, Inc.,</u> No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014) (same); <u>In</u>

<u>re Dex One Corp.,</u> No. 13-10533 (KG) (Bankr. D. Del. Mar. 19, 2013); <u>In re Conexant Sys., Inc.,</u>

No. 13-10367 (MFW) (Bankr. D. Del. Mar. 1, 2013) (same); <u>In re Buffets Rests.  Holdings, Inc.,</u>

No. 12-10237 (MFW) (Bankr. D. Del. Jan. 19, 2012) (same); <u>In re LTAP US, LLLP,</u> No. 10-

14125 (KG) (Bankr. D. Del. Jan. 28, 2011) (same); <u>In re Amicus Wind Down Corp. (f/k/a</u>

<u>Friendly Ice Cream Corp.),</u> No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011) (same).

**VI.    Cause Exists for Granting the Debtors an Extension to Comply with the Deposit
Requirements Under Section 345 of the Bankruptcy Code**

35.    Section 345(a) of the Bankruptcy Code authorizes deposit or investment of the

money of the estate, such as cash, as "will yield the maximum reasonable net return on such

money, taking into account the safety of such deposit or investment."   11 U.S.C. § 345(a).

Although section 345(a) generally requires that, with respect to deposits and investments that are

not "insured or guaranteed by the United States or by a department, agency or instrumentality of

the United States or backed by the full faith and credit of the United States," the estate must

require a bond in favor of the United States secured by the undertaking of a U.S. Trustee

approved corporate surety, the court is permitted to dispense with this undertaking "for cause."

11 U.S.C. § 345(b).

36.    The Court's ability to excuse strict performance of the requirements of section

345(b) of the Bankruptcy Code "for cause" arises from the 1994 amendments to the Bankruptcy

Code.  The legislative history of those amendments provides, in pertinent part, as follows:

> Section 345 of the Code governs investments of funds of
> bankruptcy estates.  The purpose [sic] is to make sure that funds of
> a bankrupt that are obliged to creditors are invested prudently and
> safely with the eventual goal of being able to satisfy all claims
> against the bankruptcy estate.  Under current law, all investments
> are required to be FDIC insured, collateralized or bonded.  While

> this requirement is wise in the case of a smaller debtor with limited funds that cannot afford a risky investment to be lost, *it can work to needlessly handcuff larger, more sophisticated debtors*. This section would amend the Code to allow the courts to approve investments other than those permitted by section 345(b) for just cause, thereby overruling *In re Columbia Gas Systems, Inc.*, 33 F.3d 294 (3d Cir. 1994).

In re Serv. Merch. Co., 240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999) (quoting H.R. Rep. 103-834, 103rd Cong., 2d Sess. 224 (Oct. 4, 1994); 140 Cong. Rec. H10767 (Oct. 4, 1994) (emphasis in original)).

37.    In determining whether the "cause" standard under section 345(b) of the Bankruptcy Code has been met, courts consider a "totality of the circumstances analysis," utilizing the following factors:  (i) the sophistication of the debtors' business; (ii) the size of the debtors' business operations; (iii) the amount of the funds involved; (iv) the bank ratings (Moody's and Standard and Poor's) of the financial institutions where the debtor-in-possession funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business of insuring the safety of the funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the section 345(b) requirements in light of the overall circumstances of the case.  See Serv. Merch., 240 B.R. at 896.

38.    The Debtors' funds are maintained in bank accounts insured by the United States through the FDIC (collectively, the "Deposit Guidelines").  Many of the Banks have executed a Uniform Deposit Agreement ("UDA") with the United States Trustee for the District of Delaware.  Accordingly, the Debtors believe that the Deposit Guidelines substantially comply with the approved investment guidelines identified in section 345(b) of the Bankruptcy Code. Nevertheless, out of an abundance of caution, the Debtors request (i) a 30-day extension to

comply with the requirements of section 345(b) pursuant to Local Rule 2015-2(b), and (ii) that applicable institutions be authorized to accept and hold, or invest, such funds at the Debtors' direction.

## VII. Court Should Authorize the Debtors to Continue Conducting Intercompany Transactions in Ordinary Course and Grant Administrative Expense Priority to Postpetition Intercompany Claims Among Debtors

39.    As noted above, the Intercompany Transactions are made between and among the Debtors in the ordinary course as part of the Cash Management System, and at any given time there may be intercompany claims owing by one Debtor to another.[5]  The Debtors track (and will continue to track) in their accounting system all fund transfers and all intercompany payables and receivables and the Debtors can ascertain, trace, and account for all such transactions.  If the Intercompany Transactions were to be discontinued, the Cash Management System and the Debtors' business would be disrupted to the detriment of the Debtors' estates.  Accordingly, the Debtors respectfully submit that the continued performance of Intercompany Transactions in the ordinary course is in the best interest of the estates and, therefore, the Debtors should be permitted to continue such performance without need for further order from this Court.

40.    To ensure each individual Debtor entity will not, at the expense of its creditors, fund the operations of another Debtor entity, the Debtors respectfully request, pursuant to sections 503(b)(1) of the Bankruptcy Code, that all payments between or among the Debtors on account of a postpetition Intercompany Transaction be accorded administrative expense priority.

---

[5]    Because the Debtors engage in Intercompany Transactions on a regular basis and such transactions are common among enterprises like that of the Debtors, the Debtors submit that the Intercompany Transactions are ordinary course transactions within the meaning of section 363(c)(1) of the Bankruptcy Code and, thus, do not require this Court's approval.  Nonetheless, out of an abundance of caution, the Debtors are seeking express authority to engage in such transactions on a postpetition basis.  Moreover, the continued performance of the ordinary course Intercompany Transactions is integral to ensure the Debtors' ability to operate their businesses as debtors in possession.

This relief will ensure that each Debtor entity receiving payments from another Debtor entity will continue to bear ultimate repayment responsibility for such ordinary course transactions.

41.    Similar relief has been granted in other comparable multi-debtor chapter 11 cases in this district.  See, e.g., In re RadioShack Corp., No. 15-10197 (BLS) (Bankr. D. Del. Mar. 9, 2015); In re Dendreon Corp., No. 14-12515 (LSS) (Bankr. D. Del. Dec. 9, 2014); In re Deb Stores Holding LLC, No. 1-12676 (KG) (Bankr. D. Del. Dec. 5, 2014);  In re Trump Entm't Resorts, Inc., No. 14-12103 (KG) (Bankr. D. Del. Sept. 10, 2014); In re Energy Future Holdings Corp., et al., No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014); In re Mach Gen, LLC, et al., No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014); In re ATLS Acquisition, LLC, No. 13-10262 (PJW) (Bankr. D. Del. Feb. 20, 2013); In re ICL Holding Co. (f/k/a LCI Holding Co.), No. 12-13319 (KG) (Bankr. D. Del. Dec. 14, 2012); In re Appleseed's Intermediate Holdings LLC, No. 11-10160 (KG) (Bankr. D. Del. Jan. 20, 2011).

**Bankruptcy Rule 6003 Is Satisfied**

42.    Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003.  For reasons discussed above, the relief requested herein is integral to the Debtors' continued operations in these chapter 11 cases and necessary to preserve the value of their operations and maximize the value of their estates for the benefit of all stakeholders.  Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors operations at this critical juncture.    Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## Reservation of Rights

43.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their right to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be, construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## Waiver of Bankruptcy Rule 6004(a) and 6004(h)

44.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## Notice

45.     The Debtors will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of

18

the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively: (i) authorizing the Debtors to (a) continue operating the Cash Management System, (b) honor the Bank Fees, (c) maintain existing business forms, and (d) continue the Intercompany Transactions in the ordinary course of business and provide administrative expense priority to the Intercompany Transactions, (ii) granting the Debtors a 30-day extension to comply with the requirements of section 345(b) of the Bankruptcy Code, (iii) scheduling a final hearing, and (iv) granting such further relief as may be appropriate and proper.

Dated:  April 20, 2015
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Russell C. Silberglied
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:      (302) 651-7701
Email:            silberglied@rlf.com
                      shapiro@rlf.com

-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Tyson M. Lomazow (*pro hac vice* admission pending)
Matthew Brod (*pro hac vice* admission pending)
One Chase Manhattan Plaza
New York, NY 10005
Telephone:     (212) 530-5000
Facsimile:      (212) 530-5219
Email:            tlomazow@milbank.com
                      mbrod@milbank.com

*Proposed Counsel to Debtors and Debtors in Possession*