## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x
                                                             :
In re:                                                       :        Chapter 11
                                                             :
FREDERICK'S OF HOLLYWOOD, INC., *et al.*,[1]                 :        Case No. 15-_____ (__)
                                                             :
                                                             :
                         Debtors.                            :        (Joint Administration Requested)
------------------------------------------------------------ x

### DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) DETERMINING ADEQUATE ASSURANCE OF PAYMENT FOR FUTURE UTILITY SERVICES, (II) PROHIBITING UTILITY COMPANIES FROM ALTERING, REFUSING, OR DISCONTINUING SERVICES, (III) ESTABLISHING PROCEDURES FOR DETERMINING ADEQUATE ASSURANCE OF PAYMENT, AND (IV) SCHEDULING A FINAL HEARING

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry of interim and final orders, pursuant to sections 105(a) and 366 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"), rule 6003 of the Federal Rules of Bankruptcy Procedure (as amended, the "Bankruptcy Rules"), and rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) determining adequate assurance of payment for future utility services, (ii) prohibiting utility companies from altering, refusing, or discontinuing services, (iii) establishing procedures for determining adequate assurance of payment, (iv) scheduling a

---

[1] The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows:  (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc. (8882); and (vi) Hollywood Mail Order, LLC (5205).  The debtors' principal offices are located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

final hearing, and (v) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtors  respectfully state as follows:

**<u>Jurisdiction</u>**

1.  This Court (the "<u>Court</u>") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**<u>Background</u>**

3.  On April 19, 2015 (the "<u>Petition Date</u>"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases.  The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

4.  Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand.  Since their inception, the Debtors have remained a market leader and innovator in the female fashion and lingerie industry.  The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry, personal care products, and novelties).  At their height, the Debtors operated over 200 retail stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

5.    The Debtors were compelled to commence these chapter 11 cases amidst a sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

6.    Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

7.    Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

**Utility Services and Proposed Adequate Assurance**

**I.    Utility Services and Utility Companies**

8.    In connection with the operation of their business, the Debtors obtain electricity, telephone, water, waste disposal, and other similar services (collectively, the "Utility Services") from a number of utility companies (collectively, the "Utility Companies").  A list of the Utility Companies and their affiliates that provide Utility Services to the Debtors as of the Petition Date (the "Utility Services List") is attached hereto as **Exhibit 1** to the Proposed Orders attached

hereto.[2]  The relief requested herein is requested with respect to all Utility Companies providing Utility Services to the Debtors, regardless of whether they are listed on **Exhibit 1** to the Proposed Orders attached hereto.

9.      To the best of the Debtors' knowledge, there are no defaults or arrearages with respect to the Debtors' undisputed invoices for prepetition Utility Services.  On average, the Debtors pay approximately $23,000 each month for Utility Services, calculated as a historical average over a twelve-month period ended February 28, 2015.[3]  Accordingly, the Debtors estimate that their cost for Utility Services during the next thirty (30) days (not including any deposits to be paid) will be approximately $23,000.

**II.      Proposed Adequate Assurance of Payment**

10.      The Debtors intend to pay postpetition obligations owed to the Utility Companies in a timely manner.  To the extent the Debtors utilize certain Utility Services and Utility Companies postpetition, the Debtors believe that cash held by the Debtors and the Debtors' access to the debtor-in-possession financing facility will provide sufficient liquidity to pay the Debtors' Utility Services obligations in accordance with prepetition practice.

11.      In order to provide Utility Companies with additional assurance of payment, the Debtors propose to deposit into a bank account $11,500 (the "Adequate Assurance Deposit"), which represents an amount equal to one-half of the Debtors' approximate monthly payment for all Utility Services, calculated based on the Debtors' historical average expenses over the past twelve-months.  The Adequate Assurance Deposit will be held in the segregated account for the

---

[2]    The inclusion of any entity on, or the omission of any entity from, the Utility Service List is not an admission by the Debtors that such entity is, or is not, a utility within the meaning of section 366 of the Bankruptcy Code, and the Debtors reserve all rights with respect to any such determination.

[3]    Prior to closing all of their stores, on average, the Debtors paid approximately $118,000 each month for Utility Services, calculated as a historical average over a twelve-month period ended February 28, 2015.

duration of these chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Companies. The Adequate Assurance Deposit will be placed into a newly created, segregated account (the "Utility Deposit Account") within (20) days after the Petition Date, and remain in such account for the duration of these chapter 11 cases and may be applied to any postpetition defaults in payment to the Utility Companies. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future utility services in accordance with prepetition practice (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to the Utility Companies in full satisfaction of section 366 of the Bankruptcy Code.

## III.   Adequate Assurance Procedures

12.   Any Utility Company that is not satisfied with the Debtors' Proposed Adequate Assurance may make a request with this Court for additional or different adequate assurance of future payment (each, an "Adequate Assurance Request") pursuant to the following adequate assurance procedures (also set forth in the proposed orders attached hereto as **Exhibit A** and **Exhibit B** (the "Adequate Assurance Procedures")):

a)   Any Utility Company that objects to the Debtors' Proposed Adequate Assurance must serve an Adequate Assurance Request on: (i) the Debtors, Frederick's of Hollywood, Inc. 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028; and (ii) proposed co-counsel for the Debtors, (a) Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, NY 10005 Attn: Tyson M. Lomazow, Esq., and Matthew Brod, Esq. and (b) Richards, Layton & Finger, P.A., One Rodney Square, 920 N. King Street, Wilmington, DE 19801 Attn: Russell C. Silberglied, Esq., and Zachary I. Shapiro, Esq. (together, the "Request Notice Parties").

b)   Any Adequate Assurance Request must (i) be made in writing, (ii) identify the location for which Utility Services are provided, (iii) include a summary of the Debtors' payment history relevant to the affected account(s), including any security deposits, (iv) explain why the Utility Company believes the Proposed

Adequate Assurance is not sufficient adequate assurance of future payment, and (v) be served on the Request Notice Parties.

c)    The Debtors are authorized to resolve, in their sole discretion, any Adequate Assurance Request by mutual agreement with a Utility Company and without further order of the Court and, in connection with any such agreement, in their sole discretion, provide a Utility Company with additional and/or alternative adequate assurance of payment, including cash deposits, payments of prepetition balances, prepayments, or other forms of security, if the Debtors believe such alternative assurance is reasonable.

d)    If the Debtors are unable to consensually resolve an Adequate Assurance Request by mutual agreement within the later of  (i) fourteen (14) days of receipt of the Adequate Assurance Request and (ii) thirty (30) days from the Petition Date, the Debtors shall file a motion (the "Determination Motion") to be heard before the Court at the next regularly scheduled Omnibus hearing date, to determine the adequacy of assurances of payment with respect to a particular Utility Company, pursuant to section 366(c)(3) of the Bankruptcy Code.  Pending notice and a hearing on the Determination Motion, the Utility Company that is the subject of the unresolved Adequate Assurance Request may not alter, refuse, or discontinue services to the Debtors.

## IV.    Modifications to the Utility Services List

13.    To the extent the Debtors identify new Utility Companies or discontinue services from existing Utility Companies, the Debtors seek authority, in their sole discretion, to add or remove parties from the Utility Services List.  For any Utility Company that is subsequently added to the Utility Services List, the Debtors will serve such Utility Company with a copy of this Court's order regarding Utility Services, including the Adequate Assurance Procedures.  The Debtors will increase the amount of the Adequate Assurance Deposit in the event an additional Utility Company is added to the Utility Services List by an amount equal to one-half (1/2) of a month of Utility Services provided to the Debtors by such additional Utility Company.  The Debtors request that the terms of this Court's order and the Adequate Assurance Procedures apply to any subsequently identified Utility Company, provided that such Utility Company shall

be permitted to serve an Adequate Assurance Request as provided in the Adequate Assurance Procedures. For any Utility Company that is removed from the Utility Services List, the Debtors request that they be permitted to subtract from the Adequate Assurance Deposit an amount equal to one-half (1/2) of a month of Utility Services provided by such Utility Company, and utilize such funds in the ordinary course of business.

## Relief Requested

14. The Debtors seek entry of interim and final orders, pursuant to sections 105(a) and 366 of the Bankruptcy Code, rule 6003 of the Bankruptcy Rules, and rule 9013-1(m) of the Local Rules, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) determining adequate assurance of payment for future utility services, (ii) prohibiting Utility Companies from altering, refusing, or discontinuing services, (iii) establishing procedures for determining adequate assurance of payment, (iv) scheduling a final hearing, and (v) granting certain related relief.

## Basis For Relief

15. Section 366 of the Bankruptcy Code protects a debtor against the immediate termination or alteration of utility services after the Petition Date. See 11 U.S.C. § 366. Section 366(c) requires the debtor to provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company within thirty (30) days of the petition, or the utility company may alter, refuse, or discontinue service. 11 U.S.C. § 366(c)(2). Section 366(c)(1) enumerates what constitutes "assurance of payment." 11 U.S.C. §366 (c)(1). Specifically, section 366(c)(1)(A)(i) provides that a "cash deposit," such as the Adequate Assurance Deposit, constitutes "assurance of payment."

16. Although assurance of payment must be "adequate," it need not constitute an absolute guarantee of the debtor's ability to pay. See, e.g., Long Island Lighting Co. v. Great

Atl. & Pac. Tea Co. (In re The Great Atl. & Pac. Tea Co.), No. 11-CV-1338 (CS), 2011 WL 5546954, at *5 (Bankr. S.D.N.Y. Nov. 14, 2011) (finding that "[c]ourts will approve an amount that is adequate enough to insure against unreasonable risk of nonpayment, but are not required to give the equivalent of a guaranty of payment in full").

17.     When considering whether a proposed assurance of payment is "adequate," the Court should examine the totality of the circumstances to make an informed decision as to whether the Utility Company will be subject to an unreasonable risk of nonpayment. See In re Keydata Corp., 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981) (citation omitted); In re Adelphia Bus. Solutions, Inc., 280 B.R. 63, 82-83 (Bankr. S.D.N.Y. 2002).    In determining the level of adequate assurance, however, "a bankruptcy court must focus upon the need of the utility for assurance, and . . . require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources." Virginia Elec. & Power Co. v. Caldor, Inc.-New York, 117 F.3d 646, 650 (2d Cir. 1997) (internal quotations omitted) (citation omitted).

18.     Here, the Utility Companies are adequately assured against any risk of nonpayment for future services.  The Adequate Assurance Deposit, together with the Debtors' cash on hand and access to their debtor-in-possession financing facility, provide assurance of the Debtors' payment of their future obligations.  Moreover, termination of the Utility Services could seriously hamper the Debtors' efforts to market and sell their assets. Cf. In re Monroe Well Serv., Inc., 83 B.R. 317, 321-22 (Bankr. E.D. Pa. 1988) (noting that without utility service the debtors "would have to cease operations" and that section 366 of the Bankruptcy Code "was intended to limit the leverage held by utility companies, not increase it").

19.    Courts are permitted to fashion reasonable procedures, such as the Adequate Assurance Procedures proposed herein, to implement the protections afforded under section 366 of the Bankruptcy Code.  See, e.g., In re Circuit City Stores Inc., No. 08-35653, 2009 WL 484553, at *5 (Bankr. E.D. Va. Jan. 14, 2009).  Such procedures are important because, without them, the Debtors "could be forced to address numerous requests by utility companies in an unorganized manner at a critical period in their efforts to reorganize."  Id.  Here, notwithstanding a determination that the Debtors' Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Companies believe they have under sections 366(b) and (c)(2) are wholly preserved under the Adequate Assurance Procedures.  See id. at *5-6.  The Utility Companies still may, in accordance with the Adequate Assurance Procedures, request modification of the Proposed Adequate Assurance.  See id. at *6.  The Adequate Assurance Procedures, however, avoid a disorganized and unpredictable process whereby each Utility Company could make an extortionate, last-minute demand for adequate assurance that would force the Debtors to pay under the threat of losing critical Utility Services. See id. at *5.

20.    Because the Adequate Assurance Procedures are reasonable and in accord with the purposes of section 366 of the Bankruptcy Code, the Court should grant the relief requested herein.  Similar procedures have been approved by courts in this District.  See, e.g., In re MACH Gen, No. 14-10461 (MFW) (Bankr. D. Del. Mar. 27, 2014) (approving adequate assurance deposit equal to two (2) weeks of utility service); In re Prommis Holdings, No. 13-10551 (BLS) (Bankr. D. Del. Apr. 25, 2013) (same); In re Conextant Sys., Inc., No. 13-10367 (MFW) (Bankr. D. Del. Apr. 11, 2013) (same); In re Dex One Corp., No. 13-10533 (KG) (Bankr. D. Del. Apr. 10, 2013) (same); In re Geokinetics, Inc., No. 13-10472 (KJC) (Bankr. D. Del. Apr. 2, 2013)

(same); <u>In re ATLS Acquisition, LLC</u>, No. 13-10262 (PJW) (Bankr. D. Del. Mar. 14, 2013) (same).

21.     Further, the Court possesses the power, under section 105(a) of the Bankruptcy Code, to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The Adequate Assurance Procedures and the Proposed Adequate Assurance are necessary and appropriate to carry out the provisions of the Bankruptcy Code, particularly section 366.  Accordingly, the Court should exercise its powers under sections 366 and 105(a) of the Bankruptcy Code and approve both the Adequate Assurance Procedures and the Proposed Adequate Assurance.

### Reservation of Rights

22.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code.  The Debtors expressly reserve their rights to contest any claim related to the relief sought herein.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**<u>Notice</u>**

24.    The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; (v) any Utility Company listed on **<u>Exhibit 1</u>** to the Proposed Orders attached hereto; and (vi) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of an interim order, substantially in the form attached hereto as **Exhibit A**, and a final order, substantially in the form attached hereto as **Exhibit B**, (i) determining adequate assurance of payment for future utility services, (ii) prohibiting Utility Companies from altering, refusing, or discontinuing services, (iii) establishing procedures for determining adequate assurance of payment, (iv) scheduling a final hearing, and (v) granting such further relief as may be appropriate and proper.

Dated:  April 20, 2015
Wilmington, Delaware

Respectfully submitted,


**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Russell C. Silberglied
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:     (302) 651-7700
Facsimile:     (302) 651-7701
Email:          silberglied@rlf.com
                shapiro@rlf.com

-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Tyson M. Lomazow (*pro hac vice* admission pending)
Matthew Brod (*pro hac vice* admission pending)
One Chase Manhattan Plaza
New York, NY 10005
Telephone:     (212) 530-5000
Facsimile:     (212) 530-5219
Email:          tlomazow@milbank.com
                mbrod@milbank.com

*Proposed Counsel to Debtors and Debtors in Possession*