**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
----------------------------------------------------------  x
                                                            :
In re:                                                      :        Chapter 11
                                                            :
FREDERICK'S OF HOLLYWOOD, INC., et al.,¹                    :        Case No. 15-_____ (__)
                                                            :
                                                            :
                                Debtors.                    :        (Joint Administration Requested)
----------------------------------------------------------  x
```

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING DEBTORS TO (A) CONTINUE DEBTORS' INSURANCE
PROGRAMS, (B) PAY CERTAIN OBLIGATIONS IN RESPECT THEREOF
POSTPETITION, (II) AUTHORIZING BANKS AND FINANCIAL INSTITUTIONS
TO PAY ALL CHECKS AND ELECTRONIC PAYMENT REQUESTS RELATING
TO THE FOREGOING, AND (III) SCHEDULING A FINAL HEARING**

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each,

a "Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry

of interim and final orders, pursuant to sections 105(a) and 363(b) of title 11 of the United States

Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 9013-1(m) of the

Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the

District of Delaware (the "Local Rules"), substantially in the forms attached hereto as **Exhibit A**

and **Exhibit B**, respectively, (i) authorizing the Debtors, in their sole discretion, to (a) maintain

and continue to honor certain Insurance Policies (as defined herein) and related agreements and

programs (the "Insurance Programs") (including the renewal of those Insurance Policies and

agreements in case the Insurance Policies and agreements expire during these chapter 11 cases as

---

¹    The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are
as follows:  (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH
Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc.
(8882); and (vi) Hollywood Mail Order, LLC (5205).  The debtors' principal offices are located at 6464 W.
Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

described in this Motion) and (b) pay certain obligations in respect thereof including, without limitation, the payment of all premiums, premium financing payments, claims, deductibles, administrative expenses, taxes, and all other charges and expenses incurred in connection with the Insurance Programs (collectively, the "Insurance Obligations"), on an uninterrupted basis, consistent with the Debtors' practices in effect prior to the commencement of the Debtors' chapter 11 cases, whether such Insurance Obligations relate to the period prior to or after the commencement of these chapter 11 cases, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief, as described more fully herein.  In support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1.      This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3.       On April 19, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases.  The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

4.      Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand.  Since their inception,

the Debtors have remained a market leader and innovator in the female fashion and lingerie industry.  The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry, personal care products, and novelties).  At their height, the Debtors operated over 200 retail stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

5.      The Debtors were compelled to commence these chapter 11 cases amidst a sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

6.      Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

7.      Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

**Insurance Policies and Related Payment Obligations**

8.      In the ordinary course of business, the Debtors maintain 14 insurance policies. These policies provide coverage for, among other things, the Debtors' property, commercial general and package liability, worker's compensation, umbrella coverage, and directors' and officers' coverage (each, an "Insurance Policy" and, collectively, the "Insurance Policies"). A list of the Debtors' Insurance Policies is set forth on **Exhibit 1** to the proposed interim and final orders attached hereto. The Insurance Policies require that the Debtors pay premiums (the "Insurance Premiums") as set forth therein. The Debtors estimate that their aggregate renewal premiums for the Insurance Policies for calendar year 2015, together with any associated taxes and fees, total approximately $795,145.30, of which approximately $432,390.60 has already been paid. The Debtors are also occasionally required to pay various deductibles, charges, and expenses and related taxes and fees under the Insurance Programs. As of the Petition Date, the Debtors do not believe they currently owe any outstanding amounts on account of the Insurance Policies relating to the prepetition period.

9.      The majority of the Debtors' Insurance Policies are obtained through one insurance brokerage, Hub International (the "Insurance Broker"). The Debtors do not pay separate brokerage fees to the Insurance Broker. Rather, it is the Debtors' business practice to pay the premiums owed on each Insurance Policy directly to the Insurance Broker, who then remits the premium payments to the insurance carrier, and, in turn, receives its brokerage fees from the carrier.

10.      In the ordinary course of business, the Debtors finance, through premium financing agreements (the "PFAs"), the payment of their premiums on certain insurance policies (the "Financed Policies"). The terms of such financings provide that the Debtors make initial down payments to the Insurance Broker, with the balance of the premiums being financed by

Imperial PFS ("IPFS") and Flatiron Capital ("Flatiron").  The Debtors' obligation to pay IPFS and Flatiron under the PFAs are secured by all unearned premiums and dividends, as well as loss payments, related to the Financed Policies (collectively, the "Unearned Premium"). A copy of the PFAs with Flatiron and IPFS are attached hereto as **Exhibit C** and **Exhibit D**, respectively.

11.     The Debtors currently have two PFAs, executed on August 21, 2014 and March 10, 2015, that have financed approximately $203,000 of insurance premiums and finance charges related to the Financed Policies.  To date, the Debtors have paid approximately $139,900 for the down payment, finance charges, and installment payments related to the PFAs.  During the next 21 days, the Debtors expect to pay $17,000 in interest and principal, with the next payment due on April 28, 2015.  The remaining obligations, including interest, under the PFAs equal approximately $63,100.

12.     Continuation of the Insurance Policies is essential to the preservation of the value of the Debtors' remaining businesses, properties, and assets, as they market and sell their assets, and wind down their businesses.  Moreover, in many cases, coverage provided by the Insurance Policies is required by the regulations, laws, and contracts that govern the Debtors' commercial activities, including the operating guidelines issued by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").  Accordingly, the Debtors believe that it is essential that they be able to maintain the Insurance Programs, including to pay any associated amounts that may be unpaid as of the Petition Date, renew policies in the ordinary course of business, and amend, revise, extend, supplement, change, and enter into new insurance coverage as needed in their business judgment without obtaining further order of the Court.

**Relief Requested**

13.    The Debtors seek entry of interim and final orders, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, rules 6003 and 6004 of the Bankruptcy Rules, and rule 9013-1(m) of the Local Rules, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) maintain and continue to honor the Insurance Programs (including the renewal of those Insurance Policies and agreements in case the policies and agreements expire during these chapter 11 cases) and (b) pay the Insurance Obligations, on an uninterrupted basis, consistent with the Debtors' practices in effect prior to the commencement of the Debtors' chapter 11 cases, whether such Insurance Obligations relate to the period prior to or after the commencement of these chapter 11 cases, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks and electronic payment requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief.

**Basis for Relief**

**I.    Maintenance of Insurance Policies is Required by Bankruptcy Code and U.S. Trustee Operating Guidelines**

14.    The failure to maintain the Insurance Policies could have a material adverse effect on the Debtors' businesses and the value of the Debtors' estates.  Section 1112(b)(4)(C) of the Bankruptcy Code provides that "failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case. 11 U.S.C. § 1112(b)(4)(C).  Furthermore, insurance coverage is required by the U.S. Trustee's operating guidelines as well as the laws of various jurisdictions in which the Debtors operate.

15.    The Debtors' payment in the ordinary course of any prepetition obligations under the Insurance Policies that come due after the Petition Date is warranted under section 363(b)

6

and the doctrine of necessity.  Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under section 363(b), courts in this District require only that the debtor "show that a sound business purpose" justifies the proposed use of property.  Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.), 242 B.R. 147, 153 (D. Del. 1999); see also In re Phoenix Steel Corp., 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (requiring "good business reason" for use under section 363(b) of the Bankruptcy Code).  Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct."  Comm. Of Asbestos-Related Litigs. v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); see also Stanziale v. Nachtomi (In re Tower Air, Inc.), 416 F.3d 229, 238 (3d Cir. 2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task.").

16.    Further, section 105(a) of the Bankruptcy Code further provides that a court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code, pursuant to the "doctrine of necessity."  11 U.S.C. § 105(a).  The "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein.  See Friedman's Liquidating Trust v. Roth Staffing Cos. L.P. (In re Friedman's Inc.), 738 F.3d 547, 560 (3d. Cir. 2013)  (describing the policy of equal distribution among similarly situated creditors and noting, "'Critical vendors,' like Roth Staffing, can similarly be given preferred

treatment under Section 105 and Section 363."); <u>In re Lehigh & New England Ry. Co.</u>, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); <u>see also</u> <u>In re Just for Feet, Inc.</u>, 242 B.R. 821, 824-25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); <u>In re Columbia Gas Sys., Inc.</u>, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (explaining that the doctrine of necessity is the standard in the Third Circuit for enabling a court to authorize the payment of prepetition claims prior to confirmation of a reorganization plan).

17.     As described above, continuation of the Insurance Policies is essential to preserve the value of Debtors' assets and minimize exposure to risk.  Indeed, it is essential that the Debtors carry the Insurance Policies in their day-to-day operations, or they run the risk of, among other harms, incurring financial responsibility, and legal liability, for potential occurrences not covered by insurance.  Accordingly, in order to preserve, and maximize, the value of their estates for their creditors, it is imperative that the Debtors continue carrying their Insurance Policies during these chapter 11 cases.

18.     Courts in this District have granted relief similar to the relief requested herein under section 363(b) of the Bankruptcy Code.  <u>See</u>, <u>e.g.</u>, <u>In re RadioShack Corp.</u>, No. 15-10197 (BLS) (Bankr. D. Del. Feb. 9, 2015) (authorizing debtors to pay prepetition premiums and enter into new insurance policies pursuant to section 363(b) of the Bankruptcy Code); <u>In re Powerwave Techs., Inc.</u>, No. 13-10134 (MFW) (Bankr. D. Del. Feb. 22, 2013) (same); <u>In re School Specialty, Inc.</u>, No. 13-10125 (KJC) (Bankr. D. Del. Jan. 30, 2013) (same); <u>In re CP Liquidating, Inc. (f/k/a Carl's Patio, Inc.)</u>, No. 13-10102 (KG) (Bankr. D. Del. Jan. 23, 2013) (same); <u>In re Vertis Holdings, Inc.</u>, No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2013) (same);

<u>In re Adoc Holdings Inc. (f/k/a Coda Holdings, Inc.)</u>, No. 13-11153 (CSS) (Bankr. D. Del. May 3, 2013) (same).   Courts in this District have also granted relief similar to the relief requested herein under section 105(a) of the Bankruptcy Code.   <u>See</u>, <u>e.g.</u>, <u>In re Amicus Wind Down Corp. (f/k/a Friendly Ice Cream Corp.)</u>, No. 11-13167 (KG) (Bankr. D. Del. Oct. 6, 2011).

19.     Accordingly, pursuant to sections 105(a) and 363(b) of the Bankruptcy Code, this Court may grant the relief requested herein.

## II.     Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred to Pay Insurance Obligations

20.     The Debtors further request that the Court authorize their banking institutions and all other applicable banks and other financial institutions to receive, process, honor, and pay any and all checks drawn or electronic funds relating to the prepetition premiums, whether such checks were presented prior to, or after, the Petition Date.   Under the Debtors' existing cash management system, checks or wire transfer requests can be readily identified as relating to an authorized payment of the prepetition premiums.   As such, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently.   The Debtors also seek authority to issue new postpetition checks or effect new electronic fund transfers, on account of the prepetition premiums to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected as a result of the commencement of these chapter 11 cases.

## <u>Bankruptcy Rule 6003 Is Satisfied</u>

21.     Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm."   Fed. R. Bankr. P. 6003.   For reasons discussed herein, authorizing the Debtors to continue insurance coverage entered into prepetition, and granting the other relief

requested herein, is integral to the Debtors' ability to transition its operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of its estate for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

22.     Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be, nor should it be construed as, an admission as to the validity of any claim or a waiver of the Debtors' right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

23.     To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h) and any other applicable Bankruptcy Rule.

**Notice**

24.      The Debtors will provide notice of this Motion to:  (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; (v) any insurance provider listed on **Exhibit 1** to the proposed interim and final orders attached hereto; and (vi) all parties entitled to notice pursuant to Local Rule 9013-1(m).  As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m).  The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

WHEREFORE, the Debtors respectfully request entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) maintain and continue to honor the Insurance Programs (including the renewal of those Insurance Policies and agreements in case the Insurance Policies and agreements expire during these chapter 11 cases) and (b) pay the Insurance Obligations, on an uninterrupted basis, consistent with the Debtors' practices in effect prior to the commencement of the Debtors' chapter 11 cases, whether such Insurance Obligations relate to the period prior to or after the commencement of these chapter 11 cases, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay

all checks and electronic payment requests relating to the foregoing, (iii) scheduling a final

hearing, and (iv) granting such further relief as may be appropriate and proper.

Dated:  April 20, 2015
Wilmington, Delaware                 Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Russell C. Silberglied
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701
Email:        silberglied@rlf.com
              shapiro@rlf.com
-and-

**MILBANK, TWEED, HADLEY & McCLOY LLP**
Tyson M. Lomazow (*pro hac vice* admission pending)
Matthew Brod (*pro hac vice* admission pending)
One Chase Manhattan Plaza
New York, NY 10005
Telephone:    (212) 530-5000
Facsimile:    (212) 530-5219
Email:        tlomazow@milbank.com
              mbrod@milbank.com
*Proposed Counsel to Debtors and Debtors in Possession*