IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------------ x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
FREDERICK'S OF HOLLYWOOD, INC., et al.,¹                     :    Case No. 15-_____ (__)
                                                             :
                                                             :
                                     Debtors.                :    (Joint Administration Requested)
------------------------------------------------------------ x
```

**DEBTORS' MOTION FOR ENTRY OF ORDER (I) AUTHORIZING
DEBTORS TO (A) MAINTAIN CERTAIN CUSTOMER PROGRAMS AND
(B) HONOR OR PAY CERTAIN PREPETITION OBLIGATIONS RELATED
THERETO, AND (II) AUTHORIZING BANKS AND FINANCIAL
INSTITUTIONS TO PAY ALL CHECKS AND ELECTRONIC PAYMENT
REQUESTS RELATING TO THE FOREGOING**

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry of an order, pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and rule 6003 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors, in their sole discretion, to (a) continue the Customer Programs (as defined below) and (b) honor and pay certain prepetition obligations related to the Customer Programs (the "Customer Obligations"), (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and

---

[1] The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc. (8882); and (vi) Hollywood Mail Order, LLC (5205). The debtors' principal offices are located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

electronic payment requests relating to the foregoing, and (iii) granting certain related relief, as described more fully herein. In support of this Motion, the Debtors respectfully state as follows:

**Jurisdiction**

1. This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

**Background**

3. On April 19, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases. The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

4. Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand. Since their inception, the Debtors have remained a market leader and innovator in the female fashion and lingerie industry. The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry, personal care products, and novelties). At their height, the Debtors operated over 200 retail stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

5. The Debtors were compelled to commence these chapter 11 cases amidst a

sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

6. Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

7. Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

### The Debtors' Customer Programs

8. The Debtors, in the ordinary course of their businesses, engage in certain marketing and sales practices that are, among other things, (i) targeted to develop and sustain a positive reputation for their merchandise in the marketplace, and (ii) designed to attract new customers, as well as enhance loyalty and sales among the Debtors' existing customer base. These customer-targeted practices described below (the "Customer Programs") include, but are not limited to, those practices described in the following paragraphs.

9. <u>Gift Cards, Merchandise Credit Cards, and Gift Certificates</u>. The Debtors regularly issue "gift cards" (collectively, the "<u>Gift Cards</u>"), which are redeemable by purchasers or recipients in exchange for any merchandise sold by any of the Debtors. As of the Petition Date, there were 50,972 Gift Cards outstanding, with a total value of no more than $1,323,681.11. Prior to the establishment of their Gift Card program, the Debtors issued and sold gift certificates to purchase the Debtors' merchandise or in exchange for cash at the Debtors' retail stores (the "<u>Gift Certificates</u>"). As of the Petition Date, the aggregate amount of Gift Certificates outstanding was no more than $34,754.51. Before closing their stores, the Debtors also issued merchandise credit cards to customers for returns made without a receipt or gift receipt (the "<u>Merchandise Credit Cards</u>"). Customers could only apply the Merchandise Credit Cards to future purchases of merchandise. As of the Petition Date, there were 29,455 Merchandise Credit Cards outstanding, with a total value of no more than $629,509.55.[2]

10. <u>Refund Policies</u>. Consistent with industry practices, the Debtors maintain merchandise refund and credit policies. These policies provide the Debtors' customers with comfort that they will be able to receive a refund or other appropriate adjustment if the product they purchased from the Debtors is not to their satisfaction.

11. <u>Credit Card Processing Agreements</u>. The Debtors are party to certain processing agreements (the "<u>Processing Agreements</u>") with Chase Paymentech, American Express, and Discover (the "<u>Credit Card Processors</u>"), which enable the Debtors to accept credit cards as payment for their merchandise. The Processing Agreements are essential to the Debtors' businesses, as they allow the Debtors' customers the flexibility to purchase merchandise on

---

[2] Pursuant to the asset purchase agreement with the stalking horse purchaser, the purchaser has agreed to assume any payments to support customers of the e-commerce business related to gift cards, store credits, and related customer programs, at the direction of the purchaser.

credit. This flexibility is expected by – and even taken for granted by – most retail customers and its loss would significantly impair the Debtors' ability to serve, attract, and retain their online customers.

12. Under the Processing Agreements, when a customer disputes a credit card transaction made with the Debtors, the Debtors are obligated to refund to the Credit Card Processors the purchase price of the returned merchandise (each, a "<u>Chargeback</u>" and, collectively, the "<u>Chargebacks</u>"). Generally, the Debtors' Chargeback obligations to the Credit Card Processor are satisfied by a reduction of payments currently owing to the Debtors under the Processing Agreements (collectively, the "<u>Processor Payments</u>") in the amount of the outstanding Chargebacks.[3]

13. It is possible that certain Chargebacks incurred by the Debtors immediately prior to the Petition Date may not have been fully netted out against Processor Payments received by the Debtors prior to the Petition Date. Moreover, the Debtors believe that any Chargebacks arising after the Petition Date would be ordinary course postpetition obligations of the Debtors, and therefore no relief is necessary. Nonetheless, out of an abundance of caution, pursuant to this Motion, as described below, the Debtors seek authority to continue their Credit Card Processing Agreements and the related Chargebacks in order to prevent irreparable harm to their estates.

14. <u>Debtors' Coupons</u>. In the ordinary course of their businesses, the Debtors commonly offer discount coupons (the "<u>Debtors' Coupons</u>"). The failure of the Debtors to honor the Debtors' Coupons could result in a loss of goodwill and jeopardize customer loyalty.

---

[3] Chase Paymentech currently holds a $1.1 million reserve as security for the Debtors' obligations under its Processing Agreement.

**Relief Requested**

15. The Debtors seek entry of an order, pursuant to sections 105(a), 363, 1107(a), and 1108 of title 11 of Bankruptcy Code and rule 6003 of the Bankruptcy Rules, substantially in the form attached hereto as **Exhibit A**, (i) authorizing, but not directing, the Debtors, in their sole discretion, to (a) continue the Customer Programs and (b) honor and pay Customer Obligations arising prior to the Petition Date, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and (iii) granting certain related relief.

**Basis for Relief**

**I.    Court Should Authorize the Debtors to Continue Prepetition Customer Programs**

16. The relief sought herein in this Motion may be authorized pursuant to sections 105(a) and 363(b) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad authority and discretion to enforce the provisions of the Bankruptcy Code either under specific statutory fiat or under equitable common law principles.

17. The relief sought is supported by the doctrine of necessity, first enunciated by the United States Supreme Court in <u>Miltenberger v. Logansport Ry. Co.</u>, 106 U.S. 286 (1882), pursuant to which courts may authorize a debtor to make postpetition payments with respect to prepetition claims where such payments are necessary for the preservation of the estate. <u>See also</u> <u>In re Lehigh & New England Ry. Co.</u>, 657 F.2d 570, 581 (3d Cir. 1981) (declining to apply the necessity of payment doctrine in the context of a railway no longer in operation, but noting that, under the necessity of payment doctrine, "if payment of a claim which arose prior to

6

reorganization is essential to the continued operation of the [business] during reorganization, payment may be authorized even if it is made out of corpus [of the estate]"); In re Meridian Auto Sys.-Composite Operations, Inc., 372 B.R. 710, 714 (Bankr. D. Del. 2007) (granting the debtor authority to pay prepetition obligations owed to certain critical vendors); In re Just for Feet, Inc., 242 B.R. 821, 824-26 (D. Del. 1999) (noting that debtors may pay prepetition claims that are essential to the continued operation of the debtor's business).

18. The relief sought herein plainly is essential to these chapter 11 cases. The Debtors operate in a highly competitive sector. As such, the Debtors cannot afford any material disruptions of their e-commerce business as they seek to maximize the value of their assets in anticipation of the sale process contemplated in these cases. Much of the success and viability of the Debtors' business is dependent upon the loyalty and confidence of their customers. Were the Debtors to fail to honor the Customer Programs and pay their customer obligations in the ordinary course and without interruption, they would almost certainly suffer an irreparable loss of customer support and confidence and online sales would dwindle, thereby undermining their efforts to maximize value for their estates.

19. Clearly, the expenditure of estate funds required to fulfill the Debtors' Customer Programs is minimal when compared to the benefits accruing to the Debtors from the preservation of their customer relationships. Accordingly, to maximize the value of their estates, the Debtors request that they be permitted to continue honoring and/or paying all obligations related to the Customer Programs without interruption or modification. In addition, in order to provide necessary assurances to the Debtors' online customers on a prospective basis, the Debtors request authority to continue honoring or paying all obligations to customers that arise

from and after the Petition Date in the ordinary course of business as appropriate under the circumstances.[4]

20.     Similar relief has been granted in other cases before this Court. See, e.g., In re RadioShack Corp., No. 15-10197 (BLS) (Bankr. D. Del. Feb. 6, 2015); In re Energy Future Holdings Corp., No. 14-10979 (CSS) (Bankr. D. Del. June 4, 2014); In re Fresh & Easy Neighborhood Market Inc., No. 13-12569 (KJC) (Bankr. D. Del. Oct. 1, 2013); In re Summit Business Media Holding Co., No. 11-10231 (PJW) (Bankr. D. Del. Jan. 28, 2011); In re CB Holding Corp., No. 10-13683 (MFW) (Bankr. D. Del. Dec. 13, 2010); In re Atrium Corp., No.10-10150 (BLS) (Bankr. D. Del. Jan. 21, 2010); In re The Fairchild Corp., No. 09-10899 (CSS) (Bankr. D. Del. Mar. 20, 2009); In re Smurfit-Stone Container Corp., No. 09-10235 (BLS) (Bankr. D. Del. Feb. 23, 2009).

21.     Finally, the Court may also authorize the Debtors to maintain their Customer Programs pursuant to section 363(b) of the Bankruptcy Code, which provides that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). To approve the use of a debtor's assets outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code, the Court must find that a "good business reason" exists for the use of such assets. See, e.g., Official Comm. of Unsecured Creditors v. Enron Corp. (In re Enron Corp.), 335 B.R. 22, 27-28 (S.D.N.Y. 2005) (quoting In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983)). In this case, as set forth above, maintaining certain Customer Programs and the payment of certain related obligations is necessary to keep the Debtors' existing customer base intact in order to maximize

---

[4]     The Debtors believe that, pursuant to section 363(b) of the Bankruptcy Code and other governing statutory and case law, they possess the authority to continue such Customer Programs without an express grant of authority from the Court, but seek such approval out of an abundance of caution to provide further assurances to their customers that these programs will continue to be available if offered by the Debtors.

sales and increase the value of the bankruptcy estates for the benefit of all parties in interest in these chapter 11 cases.

II. **Court Should Authorize Banks to Honor and Pay Checks Issued and Electronic Funds Transferred Relating to the Customer Programs and Obligations**

22. By this Motion, the Debtors also request that all applicable banks and other financial institutions be authorized to receive, process, honor, and pay all checks presented for payment and to honor all fund transfer requests made by the Debtors related to the Customer Programs, whether such checks were presented, or fund transfer requests were submitted, prior to or after the Petition Date.

**Bankruptcy Rule 6003 Is Satisfied**

23. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For reasons discussed above, authorizing the Debtors to maintain certain Customer Programs and pay certain related obligations, in their sole discretion, and granting the other relief requested herein is integral to the Debtors' ability to maximize the value of their estates. Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

### Reservation of Rights

24. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve the right to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' right to subsequently dispute such claim.

### Waiver of Bankruptcy Rule 6004(a) and 6004(h)

25. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

### Notice

26. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m). As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of

the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of an order substantially in the form attached hereto as **Exhibit A**, (i) authorizing the Debtors, in their discretion, to (a) maintain certain Customer Programs and (b) honor or pay certain prepetition obligations related to the Customer Programs, (ii) authorizing banks and other financial institutions to receive, process, honor, and pay all checks presented for payment and electronic payment requests relating to the foregoing, and (iii) granting such further relief as may be appropriate and proper.

Dated: April 20, 2015
Wilmington, Delaware

          Respectfully submitted,

          **RICHARDS, LAYTON & FINGER, P.A.**

          /s/ Russell C. Silberglied
          Russell C. Silberglied (No. 3462)
          Zachary I. Shapiro (No. 5103)
          One Rodney Square
          920 North King Street
          Wilmington, DE 19801
          Telephone:   (302) 651-7700
          Facsimile:   (302) 651-7701
          Email:   silberglied@rlf.com
                    shapiro@rlf.com

          -and-

          **MILBANK, TWEED, HADLEY & M$^c$CLOY LLP**
          Tyson M. Lomazow (*pro hac vice* admission pending)
          Matthew Brod (*pro hac vice* admission pending)
          One Chase Manhattan Plaza
          New York, NY 10005
          Telephone:   (212) 530-5000
          Facsimile:   (212) 530-5219
          Email:   tlomazow@milbank.com
                    mbrod@milbank.com

          *Proposed Counsel to Debtors and Debtors in Possession*