**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

```
------------------------------------------------------------  x
                                                              :
In re:                                                        :    Chapter 11
                                                              :
FREDERICK'S OF HOLLYWOOD, INC., et al.,¹                      :    Case No. 15-_____ (__)
                                                              :
                                                              :
                                        Debtors.              :    (Joint Administration Requested)
------------------------------------------------------------  x
```

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL
ORDERS (I) AUTHORIZING THE DEBTORS TO PAY CERTAIN
PREPETITION CLAIMS OF (A) CERTAIN LIEN HOLDERS,
AND (B) CRITICAL VENDORS AND SERVICE PROVIDERS,
(II) AUTHORIZING BANKS TO HONOR AND PROCESS
CHECKS AND ELECTRONIC TRANSFER REQUESTS RELATED
THERETO, AND (III) SCHEDULING A FINAL HEARING**

Frederick's of Hollywood, Inc. and its affiliated debtors and debtors in possession (each, a "Debtor" and, collectively, the "Debtors") hereby file this motion (the "Motion") seeking entry of interim and final orders, pursuant to sections 105, 363, and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (as amended, the "Bankruptcy Code"), and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), substantially in the form attached hereto as **Exhibit A** (the "Interim Order") and **Exhibit B** (the "Final Order" and, together with the Interim Order, the "Proposed Orders"), respectively, (i) authorizing the Debtors, in their sole discretion, to pay (a) claims upon which a lien may arise as a result of a mechanic's lien, artisan's lien, materialman's lien, shipper's lien, warehouseman's lien, or any other similar lien and (b) prepetition claims of certain critical vendors and service providers, (ii)

---

[1] The debtors in these chapter 11 cases and the last four digits of each debtor's taxpayer identification number are as follows: (i) FOHG Holdings, LLC (7902); (ii) Frederick's of Hollywood Group Inc. (3042); (iii) FOH Holdings, Inc. (5442); (iv) Frederick's of Hollywood, Inc. (6265); (v) Frederick's of Hollywood Stores, Inc. (8882); and (vi) Hollywood Mail Order, LLC (5205). The debtors' principal offices are located at 6464 W. Sunset Blvd., Suite 1150, Los Angeles, CA 90028.

authorizing banks and other financial institutions to honor and process checks and electronic transfer requests related to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief, as described more fully herein. In further support of this Motion, the Debtors respectfully state as follows:

## Jurisdiction

1. This court (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.

2. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## Background

3. On April 19, 2015 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No party has requested the appointment of a trustee or examiner and no committee has been appointed or designated in these chapter 11 cases. The Debtors' request for joint administration of these chapter 11 cases for procedural purposes only is currently pending.

4. Tracing their origins to 1946, the Debtors sell high quality women's apparel and related products under their proprietary Frederick's of Hollywood® brand. Since their inception, the Debtors have remained a market leader and innovator in the female fashion and lingerie industry. The Debtors' major merchandise categories are foundations (including various types of undergarments), lingerie (including daywear and sleepwear), ready-to-wear (dresses and sportswear, including denim), and fragrance and accessories (including shoes, handbags, jewelry, personal care products, and novelties). At their height, the Debtors operated over 200 retail

stores across the United States, as well as maintained a robust mail catalog and an e-commerce business through their website at www.fredericks.com.

5.    The Debtors were compelled to commence these chapter 11 cases amidst a sustained decline in operating revenue attributable to increased competition from other apparel retailers and brands, decreased foot traffic in shopping malls, and weak discretionary spending by target consumers due to the recent economic downturn.  This confluence of factors, together with the rising cost of wholesale inventory and onerous real property lease terms, ultimately resulted in the cessation of the Debtors' retail store operations prior to the Petition Date.

6.    Through these chapter 11 cases, the Debtors seek to effectuate a sale of their e-commerce business – including their intellectual property and remaining inventory – pursuant to a competitive bidding process that will maximize value for their stakeholders and inure to the benefit of all parties in interest.

7.    Additional information regarding the Debtors' businesses, assets, capital structure, and the circumstances leading to the filing of these chapter 11 cases is set forth in the Declaration of William Soncini in Support of Chapter 11 Petitions and First Day Pleadings of Frederick's of Hollywood, Inc. and its Affiliated Debtors and Debtors in Possession (the "First Day Declaration"), which is being filed contemporaneously herewith and is incorporated by reference herein.

## The Vendor Claims

**I.    Lien Claims**

8.    In the ordinary course of business, the Debtors engage various service providers, goods providers, and other vendors in connection with their e-commerce operations that could, on account of their pre-petition claims (collectively, the "Lien Claims"), potentially assert liens, including mechanic's liens, artisan's liens, materialman's liens, shipper's liens, warehouseman's

liens, and other similar liens (collectively, "Liens"), against the Debtors' property for prepetition amounts that the Debtors owe to them (collectively, the "Lien Vendors").  Pursuant to section 362(b)(3) of the Bankruptcy Code, the act of perfecting such liens, to the extent consistent with section 546(b) of the Bankruptcy Code, might be excluded from the automatic stay.  Under section 546(b) of the Bankruptcy Code, a debtor's lien avoidance powers "are subject to any generally applicable law that . . . permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection." 11 U.S.C. § 546(b)(1)(A).

9. If the Debtors are unable to pay the Lien Claims, they risk being unable to fully operate their business, which could prevent them from maximizing recoveries for all stakeholders in these chapter 11 cases.  Accordingly, the Debtors seek authority, in their sole discretion, to pay and discharge, on a case-by-case basis, the Lien Claims that the Debtors believe have created, or could give rise to, a Lien against the Debtors' property, regardless of whether the related Lien Vendors have already perfected their interests.  The Debtors estimate that, as of the Petition Date, the aggregate amount of the Lien Claims does not exceed $200,000.

**II.   Critical Vendor Claims**

10. Ensuring the continued supply of critical goods and services may be particularly challenging for the Debtors, given that the Debtors have closed all of their retail stores prior to filing for bankruptcy, and the fact that the Debtors are now in chapter 11. Given that the asset purchase agreement with the Debtors' stalking horse purchaser (the "Stalking Horse Agreement") requires the Debtors to continue to operate and preserve their e-commerce business in the ordinary course, the uninterrupted supply of such goods and inventory is essential to the Debtors' business operations.  Indeed, if the Debtors' inventory supply runs out, their e-commerce business will suffer, and there is a threat that the Debtors' customers could begin

4

shopping elsewhere, to the ultimate detriment of the Debtors and their estates. Accordingly, it is essential that the Debtors be able to maintain their business relationships with, and honor outstanding payment obligations to, certain key vendors and service providers (collectively, the "<u>Critical Vendors</u>")[2] in light of the role they will play in the Debtors' continuation of their e-commerce business. Thus, in order to prevent these chapter 11 cases from interrupting the supply of critical goods, the Debtors are seeking authority, in their sole discretion, to pay prepetition claims owing to the Critical Vendors (the "<u>Critical Vendor Claims</u>")[3] in order to ensure the continued receipt of goods and services and favorable credit terms from the Critical Vendors. In assessing strategies to continue doing business with the Critical Vendors, the Debtors have considered the availability of alternative protections for each Critical Vendor, such as prepayment and payment-in-advance or on-delivery; however, given the fact that many of the Critical Vendors are service providers, such payment alternatives are not available. The Debtors have therefore determined that paying the Critical Vendor Claims is the most effective way to ensure such Critical Vendors continue supplying goods and services and favorable credit terms to the Debtors as they enter into these chapter 11 cases.

11. The Debtors have reviewed their accounts payable and prepetition vendor lists in order to identify those creditors most essential to their operations during these chapter 11 cases, i.e., the Critical Vendors. The Debtors identified the Critical Vendors using the following criteria: (i) whether certain quality specifications or other requirements of the Debtors' customers prevent the Debtors from obtaining a vendor's products or services from alternative sources within a reasonable timeframe; (ii) whether, if a vendor is not a single source supplier, the Debtors have sufficient product in inventory to continue their operations while a replacement

---

[2] One of the Critical Vendors, NthoNet Inc., also provides utility services to the Debtors.

[3] The Debtors estimate that the total amount of Critical Vendor Claims arising pursuant to section 503(b)(9) of the Bankruptcy Code is approximately $9,078.91.

5

vendor is put in place; and (iii) whether a vendor meeting the foregoing criteria is able or likely to refuse to ship product to the Debtors postpetition if its prepetition balances are not paid.

12. The services provided by the Critical Vendors include, among other things, website infrastructure and technology support, website traffic driving, customer email marketing, and processing and shipping online customer orders. Additionally, certain Critical Vendors provide various administrative services in connection with operating the Debtors' corporate headquarters, including internet and phone connection, digital file storage, and tax calculation and reporting. The Debtors estimate that, as of the Petition Date, the aggregate amount of Critical Vendor Claims is approximately $1,200,000.

### Relief Requested

13. The Debtors seek entry of interim and final orders, pursuant to sections 105, 363, and 507 of the Bankruptcy Code, and rules 6003 and 6004 of the Bankruptcy Rules, substantially in the form attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtors, in their sole discretion, to pay the Lien Claims and the Critical Vendor (each claimant, a "Vendor" and collectively, the "Vendor Claims"), in each case subject to the caps provided for below, (ii) authorizing banks and financial institutions to honor and process check and electronic transfer requests relating to the foregoing, (iii) scheduling a final hearing, and (iv) granting certain related relief.

|  | Proposed Interim Order Cap | Proposed Final Order Cap |
| --- | --- | --- |
| Lien Claims | $100,000 | $200,000 |
| Critical Vendor Claims | $650,000 | $1,300,000 |

14. The Debtors further request that they be authorized, in their sole discretion, to condition the payment of a Vendor Claim on the agreement of the Vendor to continue supplying goods and services to the Debtors on terms that are as, or more, favorable to the Debtors as the

most favorable trade terms, practices, and programs in effect between the Vendor and the Debtors in the six (6) months prior to the Petition Date (collectively, the "Customary Trade Terms"), or such other trade terms as are agreed to by the Debtors and the Vendor.

### Basis for Relief

I.  **Court Should Authorize the Debtors to Pay Vendor Claims**

   a. **The Vendors Are Essential to Avoiding Any Unexpected or Inopportune Interruption to the Debtors' Business Operations**

15. The Debtors believe the goods and services provided by the Vendors are necessary to avoid any interruptions to their business operations through the closing date of the sale. The Vendors are generally the most cost-efficient and, in many cases, the only source from which the Debtors can procure critical goods and services within a timeframe that would permit the Debtors to avoid interruptions, delays, or shutdowns in their operations. Any failure to timely pay the Vendor Claims would, in the Debtors' business judgment, likely result in the Vendors refusing to provide necessary goods and services to the Debtors, which could undermine the Debtors' ability to preserve and maximize the value of their estates during these chapter 11 cases to the detriment of their stakeholders.

16. Specifically, the Lien Vendors may assert and perfect Liens on the Debtors' assets, thereby jeopardizing the Debtors' ability to prosecute these chapter 11 cases in a timely and efficient manner.

17. With respect to the Critical Vendor Claims, the Debtors have reviewed their accounts payable and undertaken a process to identify vendors that are essential to avoid interruptions to their operations as they enter these chapter 11 cases. The Debtors have further developed procedures that, if and when implemented, in their discretion and business judgment, will ensure that Critical Vendors who receive payment of their Critical Vendor Claims will

continue to provide goods and services to the Debtors on terms that are beneficial to the Debtors' estates.

18.     Reflecting the recognition that payment of prepetition claims of certain essential suppliers and vendors is, in fact, critical to a debtor's ability to preserve and maximize creditor recoveries, courts in this district regularly grant relief consistent with that which the Debtors are seeking in this Motion.  See, e.g., In re Longview Power, LLC, No. 13-12211 (BLS) (Bankr. D. Del. Sept. 4, 2013, interim order, and Sept. 24, 2013, final order) (authorizing payment of critical vendor claims); In re F & H Acquisition Corp., No. 13-13220 (KG) (Bankr. D. Del. Dec. 17, 2013) (authorizing payment of lien claims).

19.     The Debtors believe that authority to timely pay the Vendor Claims is vital to their efforts to preserve and maximize the value of their estates for the benefit of their stakeholders.  If the requested relief is not granted, the Debtors believe that many of the Vendors will refuse to do business with the Debtors, which may lead to the disruption of the Debtors' e-commerce business.  Such a result would be damaging to the Debtors' efforts to successfully prosecute these chapter 11 cases and close the sale.  Moreover, the continued availability of trade credit in amounts, and on terms, consistent with the Debtors' prepetition trade terms is critical to the seamless transition of their business operations to chapter 11.  The retention or reinstatement of the Customary Trade Terms will enable the Debtors to maximize the value of their business. Conversely, a deterioration in postpetition trade credit available to the Debtors, together with a disruption in the Debtors' receipt of necessary goods and services, would, among other things, increase the amount of liquidity needed by the Debtors postpetition, and impede the Debtors' restructuring efforts.  The Debtors believe that without the relief requested herein, many of the Vendors may cease delivering goods and providing services to the Debtors, which could have

devastating consequences for the Debtors and their estates.  Accordingly, for all of the foregoing reasons, the Debtors submit that cause exists for granting the relief requested herein.

### b. The Relief Requested is Supported by the "Doctrine of Necessity"

20. Section 363(b)(1) of the Bankruptcy Code provides that, after notice and a hearing, the trustee "may use, sell, or lease, other than in the ordinary course of business property of the estate . . ." 11 U.S.C. § 363(b)(1).  Section 105(a) of the Bankruptcy Code empowers a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Bankruptcy courts have invoked the equitable power of section 105 of the Bankruptcy Code to authorize the postpetition payment of prepetition claims where such payment is necessary to preserve the value of a debtor's estate. See, e.g., In re Tropical Sportswear Int'l Corp., 320 B.R. 15, 20 (Bankr. M. D. Fla. 2005) ("Bankruptcy courts recognize that section 363 is a source for authority to make critical vendor payments, and section 105 is used to fill in the blanks.").  Courts have likewise acknowledged that "[u]nder [section] 105, the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (citing In re Ionosphere Clubs, Inc., 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1989)); see In re Just for Feet, Inc., 242 B.R. 821, 825 (D. Del. 1999) (citing In re Penn Central Transp. Co., 467 F.2d 100, 102 n.1 (3d Cir. 1972)) (holding that the court is authorized under section 105(a) of the Bankruptcy Code to allow immediate payment of prepetition claims of vendors found to be critical to the debtor's continued operation).

21. In a long line of well-established cases, federal courts consistently have permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors. See, e.g., Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286, 312 (1882) (payment of pre-receivership claim permitted to prevent

"stoppage of [crucial] business relations"); In re Lehigh & New Eng. Ry. Co., 657 F.2d 570, 581 (3d Cir. 1981) (holding that "if payment of a claim which arose prior to [the commencement of the bankruptcy case] is essential to the continued operation of the . . . [business] during [the bankruptcy case], payment may be authorized even if it is made out of [the] corpus"); Dudley v. Mealey, 147 F.2d 268, 271 (2d Cir. 1945) (extending doctrine for payment of prepetition claims beyond railroad reorganization cases).

22.     This legal principle—known as the "doctrine of necessity"—functions in chapter 11 cases as a mechanism by which a bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code. See Just for Feet, 242 B.R. at 826 (finding that "[t]o invoke the necessity of payment doctrine, a debtor must show that payment of the pre-petition claims is critical to the debtor's [continued operation]."); In re Columbia Gas Sys., Inc., 136 B.R. 930, 939 (Bankr. D. Del. 1992) (recognizing that "[i]f payment of a pre-petition claim is essential to the continued operation of [the debtor], payment may be authorized"); In re Boston & Me. Corp., 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing the existence of a judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to the debtors' continued operation).  The doctrine is frequently invoked early in a bankruptcy case, particularly in connection with those Bankruptcy Code sections that relate to payment of prepetition claims.  In one case, the court indicated its accord with "the principle that a bankruptcy court may exercise its equity powers under [section] 105(a) to authorize payment of pre-petition claims where such payment is necessary 'to permit the greatest likelihood of . . . payment of creditors in full or at least proportionately.'" In re Structurlite Plastics Corp., 86 B.R. 922, 931 (Bankr. S. D. Ohio 1988).

23. As explained above, the goods and services provided by the Vendors are essential to ensure that there is no interruption to the supply of goods or services to the Debtors. The Debtors submit that the total amount to be paid to the Vendors is minimal compared to the importance and necessity of the Debtors' uninterrupted receipt of the necessary goods and services provided by the Vendors. Moreover, the Debtors do not believe there are cost-effective or readily accessible alternatives to the Vendors. Accordingly, the Debtors submit that the Court should exercise its equitable power to grant the relief requested herein.

### c. Court Should Authorize Payment of Vendor Claims as a Valid Exercise of the Debtors' Fiduciary Duties

24. Authority for satisfying Vendor Claims also may be found in sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors, operating their business as debtors in possession under sections 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners." In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." Id.

25. Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate," id., and also when the payment was to "sole suppliers of a given product." Id. at 498. The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or,

11

alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

Id.

26. Here, payment of Vendor Claims meets each element of the CoServ court's standard. As described above, the Debtors believe that the Vendor Claims encompass the claims of those Vendors that are able to assert and perfect Liens against the Debtors' property or would otherwise refuse, or be unable, to provide goods and services to the Debtors on a postpetition basis if their prepetition balances are not paid, thereby creating the significant risk that the Debtors will experience an interruption to their operations. Any such interruption could result in the Debtors' breach the Stalking Horse Agreement, as well as diminish the value of the Debtors' estate and frustrate the objectives of these chapter 11 cases.

## II. Court Should Authorize the Banks to Honor and Process the Debtors' Payments on Account of Vendor Claims

27. The Debtors also request the Court to authorize all applicable banks and other financial institutions to honor and process checks or electronic fund transfers drawn on the Debtors' bank accounts to pay prepetition obligations described herein, whether such checks or other requests were submitted prior to, or after, the Petition Date, provided that sufficient funds are available in the applicable bank accounts to make such payments. The Debtors further request that all applicable banks and other financial institutions be authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved pursuant to this Motion.

### Bankruptcy Rule 6003 is Satisfied

28. Bankruptcy Rule 6003 empowers a court to grant relief within the first twenty-one (21) days after the Petition Date "to the extent that relief is necessary to avoid immediate and

irreparable harm." Fed. R. Bankr. P. 6003. For reasons discussed above, authorizing the Debtors to pay, in their sole discretion, the Lien Vendors and Critical Vendors, and granting the other relief requested herein, is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first twenty-one (21) days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course, preserve the ongoing value of the Debtors' operations, and maximize the value of the Debtors' estates for the benefit of all stakeholders. Accordingly, the Debtors submit that it has satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

## **Reservation of Rights**

29. Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their rights to contest any claim related to the relief sought herein. Likewise, if the Court grants the relief sought herein, any payment made pursuant to an order of the Court is not intended to be nor should it be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver Of Bankruptcy Rule 6004(a) and 6004(h)**

30. To implement the foregoing successfully, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Notice**

31. The Debtors will provide notice of this Motion to: (i) the Office of the United States Trustee for the District of Delaware; (ii) the holders of the 30 largest unsecured claims on a consolidated basis; (iii) counsel to Salus Capital Partners, LLC, in its capacity as the administrative and collateral agent under the Debtors' prepetition credit facility and in its capacity as the administrative and collateral agent under the Debtors' proposed debtor-in-possession financing facility; (iv) any banking or financial institution that holds the Debtors' accounts; and (v) all parties entitled to notice pursuant to Local Rule 9013-1(m). As this Motion is seeking "first day" relief, notice of this Motion and any order entered hereon will be served on all parties required by Local Rule 9013-1(m). The Debtors submit that, in light of the nature of the relief requested and the urgency of the circumstances surrounding this Motion, no other or further notice need be given.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

WHEREFORE, the Debtors respectfully request entry of interim order and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, respectively, (i) authorizing the Debtors, in their sole discretion, to remit and pay the Vendor Claims (ii) authorizing the Banks to honor and process check and electronic transfer requests related thereto, (iii) scheduling a final hearing, and (iv) granting such further relief as may be appropriate and proper.

Dated:  April 20, 2015
Wilmington, Delaware

Respectfully submitted,

**RICHARDS, LAYTON & FINGER, P.A.**

/s/ Russell C. Silberglied
Russell C. Silberglied (No. 3462)
Zachary I. Shapiro (No. 5103)
One Rodney Square
920 North King Street
Wilmington, DE 19801
Telephone:   (302) 651-7700
Facsimile:   (302) 651-7701
Email:   silberglied@rlf.com
   shapiro@rlf.com

-and-

**MILBANK, TWEED, HADLEY & M<sup>c</sup>CLOY LLP**
Tyson M. Lomazow (*pro hac vice* admission pending)
Matthew Brod (*pro hac vice* admission pending)
One Chase Manhattan Plaza
New York, NY 10005
Telephone:   (212) 530-5000
Facsimile:   (212) 530-5219
Email:   tlomazow@milbank.com
   mbrod@milbank.com

*Proposed Counsel to Debtors and Debtors in Possession*